1  MATTHEW RAFAT (SBN 221577)
   PO Box 111351
2  Campbell, CA 95011-1351
   408-871-2899
3

4  Attorney for Defendants
   Benjamin Silva, Matthew McKee,
5  and Tsu Hsien "Steve" Wang

6

7                    NORTHERN DISTRICT OF CALIFORNIA

8                       SAN FRANCISCO DIVISION

9  TVIA, INC., a Delaware Corporation,        CASE NO: C 08 01908 SC

10         Plaintiff,

11  vs.                                        DEFENDANTS' SILVA, MCKEE, AND
                                               WANG's 12(b)(6) MOTION
12  BENJAMIN SILVA, an individual TSU
    HSIEN "STEVE WANG", an individual;         Date:  June 6, 2008
13  MATTHEW MCKEE, an individual;              Time: 10:00AM
    DIANE BJORKSTROM, an individual;           Court: 1, 17th Floor
14  MICHAEL BUTTRICK, an individual;
    YK SYNNET, a Japanese Corporation;         Date Set for Trial: N/A
15  AND DOES 1 to 50, inclusive,

16
           Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

                                      1

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………4

SUMMARY OF ARGUMENT………………………………………………………..5

LEGAL ANALYSIS………………………………………………………………..6

STANDARD FOR A MOTION TO DISMISS GENERALLY………………………………6

COMPLAINT FAILS TO COMPLY WITH FRCP 9(b) AND LACKS STANDING………………6

Plaintiff Alleges No Injury to the Company Itself, Only Shareholders, and Therefore It Lacks standing to Sue Defendants……………………………………… 6

Plaintiff, as an Issuer of Stock, Lacks Standing to Sue for NASDAQ Price Fluctuations………………………………………………………………………6

Plaintiff Cannot Satisfy its Burden that It Has Suffered any Injury-In-Fact to Sue for Insider Trading………………………………………………………………......7

Plaintiff Cannot Plead Reliance, another Essential Element………………………………8

Plaintiff Cannot Plead a Viable Cause of Action Based on Customer Returns………………..…8

Plaintiff's Complaint is Speculative and Fails to Meet the FRCP 9(b) Pleading Standard……….....9

Even the Court Takes Plaintiff's Allegations as True, its Own Complaint Lists No Possible Injury to the Company………………………………………………………………………12

PLAINTIFF HAS NOT ADEQUATELY PLED THAT DEFENDANTS BREACHED ANY FIDUCIARY DUTIES……………………………………………………………13

Plaintiff Admits that McKee, Buttrick, and Wang are Merely "Sales Managers"………………..13

Plaintiff Fails to Cite any Actions by Defendant Silva Where He Acted against Company Interests………………………………………………………………………13

NO UNJUST ENRICHMENT CLAIM EXISTS IF PLAINTIFF CANNOT PLEAD THE UNDERLYING ALLEGATIONS ADEQUATELY…………………………………………...14

CONCLUSION………………………………………………………………………14

DECLARATION OF MATTHEW RAFAT…………………………………………………15

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Bell Atl Corp v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)......................................................7

3

<u>Dartmouth Review v. Dartmouth Coll.</u>, 889 F.2d 13, 16 (1st Cir. 1989)..............................7

4

<u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997)...............................................................................7

5

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)................................................8

6

<u>Allen v. Wright</u>, 468 U.S. 737 751, 752 (1984).................................................................8, 9

7

<u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 243 (1988).................................................................9

8

<u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128, 154 (1972)..........................9

9

<u>Hayduk v. Lanna</u>, 775 F.2d 441, 443 n. 1 (1st Cir. 1985)....................................................10

10

<u>Conrad v. Bank of America</u> (1996) 45 Cal.App.4th 133......................................................10

11

<u>Lazar v. Superior Court</u> (1996) 12 Cal.4th 631...................................................................10

12

<u>In re Pacific Gateway Exch Sec Litig</u>, 169 FSupp 2d 1160, 1164 (ND Cal 2001).....................10

13

<u>In re Glenfed</u>, 42 F.3d 1541, 1547-48.................................................... .....10

14

<u>Kaplan v. Rose</u>, 49 F3d 1363, 1370 (9th Cir 1994) ...........................................................10

15

<u>Celador v. Walt Disney</u>, 347 FSupp2d 846, 855 (CD Cal 2004) ...........................…........10

16

<u>In re Syntex</u>, 855 FSupp 1086, 1100 (ND Cal 1994) ..........................................................10

17

<u>County of Santa Clara v. Astra U.S.</u>, 428 FSupp2d 1029, 1036 (ND Cal 2006)...................12

18

<u>Neubronner v Milken</u>, 6 F.3d 666, 672 (9th Cir 1993).........................................................12

19

<u>Suna v. Bailey Corp.</u>, 107 F.3d 64, 68.................................................................................13

20

<u>Serabian v. Amoskeag Bank Shares, Inc.</u>, 24 F.3d 357, 361 (1st Cir.1994).........................13

21

<u>Wayne Investment v. Gulf Oil Corp.</u>, 739 F.2d 11, 13 (1st Cir.1984)...............................13

22

<u>Glen Holly v. Tektronix</u>, 100 FSupp2d 1086, 1094 (CD Cal 1999)....................................14

23

24

25

26

27

28

Defendants' 12(b)(6) Motion                                                    TVIA, Inc. v. Silva., et al.

<u>INTRODUCTION</u>

Plaintiff TVIA has five local employees, and its delisted stock price hovers around two cents per share. Plaintiff has sued Defendants Silva, McKee, and Wang (collectively, "Defendants") several times already in California state court. See Santa Clara County Case Numbers 1-07-CV-084211, 1-07-CV-089862, and 1-08-CV-104728. Yet, nowhere in *any* complaint does Plaintiff demonstrate any harm to itself as a corporation.

Plaintiff filed this complaint alleging insider trading and fraud based on vague allegations of agreements between distributors and salespersons. It appears that Plaintiff is alleging that defendants inflated revenue by recording income improperly and used such information to engage in insider trading. If true, Plaintiff fails to state a cognizable claim because as a corporation, Plaintiff would have benefited from any increase in its stock price due to allegedly inflated revenue. In addition, Plaintiff, as the issuer of stock, lacks standing to assert such claims if the only damages relate to a diminution in its stock price. Indeed, in some cases, the individual defendants paid Plaintiff to exercise options, providing much-needed cash to the company. Therefore, any claim for insider trading fails because Plaintiff, as the corporate issuer, received appropriate value for exercising any shares it alleges defendants later sold at inflated prices. Being the corporate issuer, Plaintiff lacks standing to assert claims on behalf of individual shareholders who may have bought its shares.

With respect to any other alleged source of damages, such as side "distributor" agreements, Plaintiff once again fails to state a viable cause of action under the Federal Rules of Civil Procedure ("FRCP"). Its claims based on "side agreements" lack specificity, because no allegation has been pled sufficiently under FRCP 9(b) stating who paid defendants, when such payments took place, and what particular side agreement existed that diverted funds from Plaintiff to its employees. Plaintiff has not attached any "side agreements" to its complaint and yet appears to base its entire complaint on their existence.

Plaintiff's other claims are based on conclusory allegations and speculation. While difficult to ascertain exactly what is being alleged, Plaintiff is apparently blaming its employees for its own lack of accounting controls. Once an employee reports sales or revenue, it is the accounting department's duty to decide whether and how to recognize the revenue. Plaintiff's complaint, if not dismissed, would mean that every sales manager could be theoretically responsible for verifying each and every transaction prior to reporting it to their company. In the modern economy, such problems are best resolved by letters of credit and between banking institutions rather than litigation against employees.

## SUMMARY OF ARGUMENT

Defendants Wang, Silva, and McKee have moved to dismiss all claims in the above-captioned action because Plaintiff lacks standing to assert all claims and does not satisfy FRCP 9(b), California, or federal requirements for pleading a fraud claim:

• (1) Plaintiff lacks standing to sue. As a corporate issuer of stock, it is unaffected when its stock price fluctuates; (2) as the corporate issuer, it received payment for any shares exercised by defendants, and so lacks standing to claim a diminution in share value once those shares enter the public NASDAQ market; and

• Plaintiff fails to satisfy the pleading requirements for fraud because its complaint is not sufficiently specific to allow defendants to ascertain what statements or agreements were made, when they were made, by whom they were made, whether oral or written, that led to any actual damages; and

• Plaintiff does not allege particular facts based on personal knowledge that support its allegations, and in fact makes various allegations on "information and belief," a disallowed pleading format under FRCP 9(b); and

• Plaintiff's claims for breaches of fiduciary duty against defendants fail because all allegations are related to securities violations, and defendants paid the appropriate price for their shares, which Plaintiff accepted; and

Defendants' 12(b)(6) Motion                                                                                    TVIA, Inc. v. Silva., et al.

• Plaintiff lacks standing to state a claim for unjust enrichment, because as a corporate issuer, it does not suffer a tangible loss when it issues stock options and shares; in fact, it received monies when defendants paid the company to convert their options into shares.

<u>LEGAL ANALYSIS</u>

I.    <u>STANDARD FOR A MOTION TO DISMISS GENERALLY</u>

As the U.S. Supreme Court has held, in order to survive a motion to dismiss, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl Corp v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u> at 1965.  "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; instead, a plaintiff must set forth facts that provide "plausible grounds" for the inference of each fact essential to the element of a claim." *Id*.

Conclusory allegations or legal conclusions masquerading as facts will not suffice to prevent a motion to dismiss. See <u>Dartmouth Review v. Dartmouth Coll.</u>, 889 F.2d 13, 16 (1st Cir. 1989).

II.   <u>COMPLAINT FAILS TO COMPLY WITH FRCP 9(b) AND LACKS STANDING</u>

A.    <u>Plaintiff Alleges No Injury to the Company Itself, Only Shareholders, and Therefore It Lacks Standing to Sue Defendants</u>

1.    *Plaintiff, as an Issuer of Stock, Lacks Standing to Sue for NASDAQ Price Fluctuations*

It can be said that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997).  Plaintiff has failed to demonstrate standing.  It has failed to plead an injury-in-fact that is both actual or imminent as well as concrete and particularized.  Further, Plaintiff's claims are not redressable.  Therefore, Plaintiff does not have standing to advance its claims, and federal courts do not have jurisdiction to hear its claims.

Plaintiff argues that it deserves the gains back from the stock sales made by its ex-employees.  But nowhere in the Complaint does Plaintiff allege how it has standing to sue to recover the gains

from stock sales.  As a corporate issuer, it cannot benefit or lose any monies when shareholders trade

its stock on the NASDAQ.  Thus, Plaintiff has not and cannot demonstrate any direct involvement

related to any loss caused by defendants' conduct.

      2.     *Plaintiff Cannot Satisfy its Burden that It Has Suffered any Injury-In-Fact to Sue for Insider Trading*

"[I]f the judicial power extended...to every question under the laws...of the United States,"

John Marshall warned, "[t]he division of power [among the branches of government] could exist no

longer, and the other departments would be swallowed up by the judiciary." 4 Papers of John

Marshall 95 (C.  Cullen ed.)  For this reason, examining a plaintiff's standing is crucial in all cases

before federal courts.  Here, Plaintiff has failed to meet its burden of establishing that it has suffered

any direct injury addressable by this Court—to have standing, "the plaintiff must have suffered an

'injury in fact,'" that is "actual or imminent" and "concrete and particularized." Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992).  In addition, Plaintiff must demonstrate that the alleged injury

is "fairly traceable" to the conduct complained of and that "the injury will be redressed by a favorable

decision." Id.  See Allen v. Wright, 468 U.S. 737, 751 (1984): "A plaintiff must allege personal injury

fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

requested relief."  Plaintiff bears the burden of demonstrating that it has satisfied all three elements.

      Here, as the corporate issuer of stock, Plaintiff cannot allege it suffered from diminution of

share price when it was paid for those shares directly by its ex-employees at a price it controlled, as

the corporate issuer.  Thus, Plaintiff's complaint is based on the gains defendants made from

exercising stock options on the public market, not in any transaction between the parties in this

litigation. See Complaint, page 22, lines 17-26: Plaintiff admits that it received funds directly from

defendants to exercise options. The complaint also admits that the shares were sold on the public

market, not between the parties.  See Complaint, page 1, lines 23-25: "At all relevant times herein,

the Company's shares were publicly traded on the NASDAQ stock exchange. Though the Company's

stock has recently been delisted from NASDAQ, the Company's shares are still publicly traded."

Plaintiff, as a corporate issuer that sold stock directly to defendants at a price set by Plaintiff, lacks standing to allege injury based on stock sales made to the public.  We note that the standing question is not merely whether a given claim can be heard, but whether the given litigants are the proper parties to bring a given claim. <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984) ("the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.")

       3.      *Plaintiff Cannot Plead Reliance, another Essential Element*

Reliance ensures the "requisite causal connection" between a defendant's misrepresentation or omission, or deceptive or manipulative conduct, on the one hand and the plaintiff's injury on the other.  <u>Id</u>., slip op. at 8, citing <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 243 (1988); <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128, 154 (1972) (requiring "causation in fact").  As the Court noted, "reliance is tied to causation" -- "whether [the defendants'] acts were immediate or remote to the injury."  Here, Plaintiff cannot allege how it has or can suffer any damages as a result of stock sales on the public market, especially when defendants actually paid it directly to exercise shares.  Once it received funds from the employees to exercise their shares, its involvement as a relevant party expired.

       4.      *Plaintiff Cannot Plead a Viable Cause of Action Based on Customer Returns*

With respect to later allegations, Plaintiff seems to be upset that its customers returned most its products.  See <u>Complaint, page 24, lines 24-27, and page 25, lines 1-2</u>: "most of this inventory has now been returned to the company."  Plaintiff fails to state a cause of action because it is not insider trading when a customer returns a company's product; in addition, even based on the complaint itself, Plaintiff states that "most," not all, of its products have been returned, meaning that Plaintiff continues to benefit from a relationship with this particular customer.  No cognizable legal theory allows Plaintiff to state a viable cause of action for insider trading or fraud based on customer returns.  Employees are not responsible for insuring a company's product.  Lacking any specifics of which

characters paid defendants directly, when such payments were made, and under which agreements

these payments were made, Plaintiff cannot properly state any cause of action for fraud under FRCP

9(b).  In addition, state substantive law prevents employees from insuring an employer against losses.

B.     Plaintiff's Complaint is Speculative and Fails to Meet FRCP 9(b) Pleading Standards

FRCP 9(b) states, "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  FRCP 9(f) states that an "allegation of time or place is

material when testing the sufficiency of a pleading."  "Moreover, in actions alleging conspiracy to

defraud or conceal, the particularity requirements of Rule 9(b) must be met." See Hayduk v. Lanna,

775 F.2d 441, 443 n. 1 (1st Cir. 1985).  Here, Plaintiff is apparently also alleging a conspiracy to

defraud the company but fails to cite any specific agreements, only motivational emails exchanged

between company salespersons.

California state law requires a similar standard: in order to establish cause of action for fraud,

plaintiff must plead and prove in full, factually and specifically, all of elements of cause of action;

general and conclusory claims of fraud will not suffice. Conrad v. Bank of America (1996) 45

Cal.App.4th 133.  In asserting a fraud claim, plaintiff must allege names of persons who made

allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or

wrote, and what was said or written. Lazar v. Superior Court (1996) 12 Cal.4th 631.  The federal

standard is similar—See In re Pacific Gateway Exch Sec Litig, 169 FSupp 2d 1160, 1164 (ND Cal

2001), citing In re Glenfed, 42 F.3d 1541, 1547-48, and Kaplan v. Rose, 49 F3d 1363, 1370 (9th Cir

1994); Celador v. Walt Disney, 347 FSupp2d 846, 855 (CD Cal 2004).  Plaintiffs must also allege

who made any alleged fraudulent misrepresentation—which is crucial here, where the only

allegations cited against defendants are comments made between themselves—see In re Syntex, 855

FSupp 1086, 1100 (ND Cal 1994).

Plaintiff fails to meet both the federal and state pleading standards: see, for example,

Complaint, page 1, lines 26-28: "Defendants Silva, Wang, McKee, and Buttrick engaged in a pattern

9

and practice of entering into undisclosed side agreements with a number of 'distributors.'"  No time is

provided, nor who these "distributors" are, or even which "side agreements" were entered into.  See

also <u>Complaint, page 2, lines 11-16</u>: "The Sales Team engaged in the practice of entering into

undisclosed side agreements with distributors…the distributors were essentially acting as sham

middlemen."  Once again, there are no specifics in terms of who these distributors are, what these

side agreements said, and how Plaintiff would have knowledge of the agreements if they were in fact

"undisclosed."  This strain of rampant speculation continues—on the same page, Plaintiff makes

references to "assistance from McKee" and "new customers," without explaining a) what kind of

assistance was provided, and b) who these new customers are.

It is not until page 8 of the 32 page complaint that we come to an alleged "sham middleman,"

"Ricom."  However, the complaint continues to be vague in terms of time and specific transactions

that Plaintiff alleges were fraudulent.  For example, on page 9, lines 2-4, Plaintiff makes sweeping

allegations without indicating any specifics: "Silva and Wang stockpiled the inventory with

Ricom…to make the sales plan number…fraudulently."

Later, the only specifics provided in support of the allegations above appear to involve a

legitimate deal between the customer and the defendants—see page 10, lines 1 to 12: "Cash

collection from Ricom will be…1st payment around 40k…maximum 265k."

Plaintiff's allegations are so vague, it uses Defendant Silva's motivational emails to make

their case: see page 10, lines 18-22: "Our bonus in Q1 next year depends on EVERONE pulling their

weight.  It is a $5M quarter, and there is just no way that we will make it if everyone does not pull

their own weight."

In other allegations, Plaintiff clearly lacks specific evidence, because it cannot state with

specificity the dates and the persons involved in the alleged fraud, with specific statements.  See page

11, lines 17 to 26—no names are mentioned other than a general company name, and Plaintiff cannot

provide a specific date close enough to when any statements were made, only a month and year.  In

some places, it is clear that Plaintiff is resorting to pure speculation: see page 12, 14-16: "[T]he Company is **informed and believes** that Protech never received the inventory and that [Defendant] Wang is selling the units and pocketing the money for himself."  Such pleading is clearly inadequate: allegations of fraud based on information and belief, let alone obvious supposition, are not sufficient under FRCP 9(b).  County of Santa Clara v. Astra U.S., 428 FSupp2d 1029, 1036 (ND Cal 2006).  "A plaintiff who makes allegations on information and belief must state the factual basis for the belief." Neubronner v Milken, 6 F.3d 666, 672 (9th Cir 1993).  Here, Plaintiff has not stated any factual basis for their belief, and cannot do so.

For the next several pages of the complaint, Plaintiff alleges improper recording of revenue, but none of it would involve the individual defendants.  Sales managers are not responsible for recording revenue or annual accounting reports.  It is undisputed that Defendants Silva, McKee, and Wang were sales managers, not accountants.  Presumably, Plaintiff realizes it cannot place the blame for how it recorded its revenue on its sales force, so it returns to citing motivational emails by Silva (page 14, lines 12-14), and then resorts to vague speculation: "In some instances, the Sales Team made promises to license TV board designs…" See Complaint, page 14, lines 15-16.  Once again, Plaintiff fails to specify which companies are involved in the licensing deals, and when such promises were made and to whom.  These kinds of vague allegations are insufficient to place defendants on adequate notice about what wrongdoing is being alleged.

The remainder of Plaintiff's complaint then admits that the actions alleged to be improper resulted in a higher stock price of "$3.00 per share."  See Complaint, page 16, lines 22-25.  Thus, based on its own statements, Plaintiff has failed to state a cause of action from pages 1 to 17, because it admits that such actions caused the company to benefit in the form of a higher stock price.

By the time Defendants arrive at the actual counts in the Complaint, such counts are based entirely on the speculative claims made in pages 1 through 26—which, as we have discussed, lack specificity.

**C.     Even the Court Takes Plaintiff's Allegations as True, its Own Complaint Lists No Possible Injury to the Company**

We remind the Court again that Plaintiff's Complaint cannot allege any injury to the corporate issuer, and as a result, Plaintiff lacks standing to sue defendants.  Plaintiff cites the alleged harm it believes defendants caused it on page 22 of its Complaint—defendants engaged in insider trading and fraud by selling stock at higher, inflated prices. However, as stated above, Plaintiff has not met the pleading standard for such a claim, and lacks standing to claim fraud based on public stock sales.  As a result, its complaint should be dismissed with prejudice to prevent future artful pleading.

A complaint alleging fraud must set forth the basis of the claim with clarity and particularity (the "clarity-and-basis requirement").  As explained above, under Rule 9(b), a plaintiff bringing a securities claim must "allege 'specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.'" Suna v. Bailey Corp., 107 F.3d 64, 68 (quoting Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st Cir.1994)). "It is well settled that Rule 9(b) requires the plaintiff in a securities fraud case to specify the time, place and content of an alleged false representation." Romani, 929 F.2d at 878 (citing Wayne Investment v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir.1984)); see also Suna, 107 F.3d at 68 (quoting Serabian, 24 F.3d at 361) ("the rule requires that the particular 'times, dates, places or other details of [the] alleged fraudulent involvement of the actors be allege.'") Further, this heightened pleading applies even when information regarding the fraud is within the knowledge of the defendant. Id.

Here, the heightened pleading standard is particularly apropos, because even if the Court takes all of Plaintiff's allegations as true, Plaintiff's insider trading claim alleges only that defendants sold securities on the public market.   But stock sales by shareholders do not harm corporate issuers, because the proceeds from a sale of shares do not flow to the issuer.  The only time the issuer benefits from a stock is at the IPO level is when it receives funds to expand and sell ownership stakes. Beyond that time period, shares may be used as collateral for future loans or financing, allowing further expansion.  In its complaint, Plaintiff actually admits that its allegations relating to insider

1  trading and fraud resulted in a higher stock price.  Without more specificity about how Plaintiff

2  suffered any tangible loss as a result of a higher stock price, Plaintiff's claims for insider trading and

3  fraud are frivolous.

4       In addition, under FRCP 9, Plaintiff's general fraud claim fails to state a cause of action,

5  because it does not set forth exactly what is fraudulent about any particular action.  Allegations of

6  "fraud by hindsight"—i.e., asserting that "later revelation of bad news" necessarily indicates that

7  previous actions must have been illegal—are insufficient.  See <u>Glen Holly v. Tektronix</u>, 100 FSupp2d

8  1086, 1094 (CD Cal 1999).  Plaintiff has pled no facts, such as inconsistent statements, active

9  misrepresentations, or statements against the company, to show that any of the sales to Ricom or

10  anyone else was designed to be improper.  Such allegations of "fraud by hindsight" are inadequate

11  under FRCP 9(b).  Thus, with respect to the first and fourth causes of action—insider trading and

12  fraud—there is no possible injury to Plaintiff.

13

14  III.   <u>PLAINTIFF HAS NOT ADEQUATELY PLED THAT DEFENDANTS BREACHED ANY FIDUCIARY DUTIES</u>

15

16  A.   <u>Plaintiff Admits that McKee, Buttrick, and Wang are Merely "Sales Managers"</u>

17       In its Complaint, page 4, lines 19-24, Plaintiff admits that Defendants McKee, Silva, Buttrick,

18  and Wang are either sales managers or involved in sales, not accounting functions or roles.  Plaintiff

19  has alleged no facts to establish that they are fiduciaries.

20  B.   <u>Plaintiff Fails to Cite any Actions by Defendant Silva Where He Acted against Company Interests</u>

21

22       If Defendant Silva recorded sales that lifted Plaintiff's stock price, no cause of action exists.

23  If Plaintiff's stock price eventually decreased due to improper recording of revenue by Plaintiff's

24  financial consultants and outside tax preparers, this is an accounting issue, not a sales issue.

25  Defendants were not responsible for how revenue was recorded, and no allegation states that

26  defendants were responsible for certifying sales or revenue.  Plaintiff has not alleged that Defendants

27  McKee, Wang, and Silva are accountants or CPAs.  Once Plaintiff admits that defendants lack tax

28

Defendants' 12(b)(6) Motion                                          TVIA, Inc. v. Silva., et al.

knowledge and were hired as salespersons, defendants cannot be fiduciaries of anything related to

how Plaintiff recorded revenue. If Plaintiff failed to properly record or verify the revenue stated by

Defendants Silva, McKee, or Wang, at best, the buck would stop with the upper management, or an

outside CPA firm, not with the sales team. Salespersons have no fiduciary obligation to minimize

sales, to research who they are selling to (as long as the buyers agree to pay the company), or to

engage in any particular way of selling a product, as Plaintiff is apparently claiming in its Complaint.

Indeed, each and every allegation claimed in the Complaint actually brought Plaintiff money, and as

the Complaint implies, Plaintiff is still doing business with Ricom, the very entity Plaintiff is now

claiming is a "sham" middleman.

IV.    NO UNJUST ENRICHMENT CLAIM EXISTS IF PLAINTIFF CANNOT PLEAD THE
       UNDERLYING ALLEGATIONS ADEQUATELY

       As explained above, Plaintiff, as the corporate issuer, lacks standing to sue for stock gains or

losses. An unjust enrichment claim assumes that an actor has done something illegal that resulted in

financial gain. The theory is that disgorgement of profits can be an appropriate remedy in certain

cases, even without a statutory basis. Here, however, Plaintiff cannot promulgate any specific

allegations of wrongdoing that rise to the standards required under federal and state law. If Plaintiff's

unjust enrichment claim is predicated on being able to allege some specific wrongdoing by

defendants, and Plaintiff cannot plead such specific allegations with the proper legal standard, this

claim must be dismissed also. In any case, Plaintiff lacks standing to receive monies from any stock

sales. It is an issuer of stock, not a shareholder that bought or sold shares directly from defendants.

V.    CONCLUSION

       For the foregoing reasons, Defendants request that the Complaint be dismissed with prejudice.

Dated: April 25, 2008                          /sd/ Matthew Rafat
                                               MATTHEW RAFAT, Esq.
                                               LAW OFFICE OF MATTHEW RAFAT
                                               Attorney for Ben Silva, Matthew McKee,
                                               and Steve Wang

## DECLARATION OF MATTHEW RAFAT

The undersigned, Matthew Rafat, being first duly sworn, declares as follows:

1.  I am over 18 years old, am competent to testify, am basing my statements on personal knowledge, and if called to testify, I will do so willingly.

2.  My business address is PO Box 111351, Campbell, CA 95011-1351.

3.  Plaintiff's pattern of filing and then dismissing cases without paying costs indicates that its in-house counsel uses litigation to harass defendants and ex-employees.  See Santa Clara County Cases No. 07-CV-084211 and 1-07-CV-089862 (one of which was dismissed).

4.  My clients and I have read through each and every allegation in the complaint and cannot determine what injury has been suffered by the corporation directly.   If the harm is based on stock price, Plaintiff is an issuer of stock.  It has not pled that it purchased inflated shares directly from defendants in the public market (NASDAQ) and then suffered a direct loss when it sold those shares.

5.  Because I am attorney of record in the state court actions involving defendants and Plaintiff, I have possession of Plaintiff's company documents and have personal knowledge of its business and products.  There is a protective order in place in the state court actions, so I do not specifically refer to any non-public documents and do not attach any documents to this declaration.  Plaintiff Tvia Inc. is a fabless semiconductor company. It sells semiconductor chips.  Semiconductors, by themselves, are worthless in terms of utility.  (They need to be put into a product to have any utility value.)  It is business custom and practice to sell semiconductor chips to intermediaries or distributors, who would then sell these chips to manufacturers and/or retailers, who typically have connections and agreements with manufacturers than use semiconductors.  A smaller chip maker like TVIA, whose product is not the general standard and is less technologically-advanced than its competitors, who have integrated "system on a chip" designs, relies on a

Defendants' 12(b)(6) Motion                                                          TVIA, Inc. v. Silva., et al.

sales network that includes retailers and manufacturers willing to use its product.  During the time Plaintiff employed Defendants, Plaintiff did not make televisions or finished products with its chips.  Even today, based on documents I have reviewed, Plaintiff does not own any manufacturing facilities.  Its own website (http://www.tvia.com/index.cfm?page=body&crid=52) clearly states that it is trying to make designs for other "TV manufacturers."  Thus, Plaintiff clearly needed middlemen to sell its products, and such middlemen would logically have agreements establishing business terms.  Plaintiff's entire complaint appears to be based on the idea that these middlemen acted fraudulently by using such business agreements, but does not attach a single agreement to its complaint, or state with specificity which terms in these agreements are fraudulent.  Because Plaintiff does not introduce any specific evidence, it is merely speculating that because some middlemen returned some products, that they must have been shams.  Such conclusory allegations appear to be insufficient under FRCP 9(b).

6.    Defendants' primary argument is that Plaintiff lacks standing to sue them for any insider trading.  With respect to the other claims, including fraud, Plaintiff may explore the idea of suing the entities it calls "sham middlemen," but it does not have standing to sue defendants, who had to deal with middlemen to sell company product.  If a "sham" middleman violated a side agreement, such a violation would be between the middleman and Plaintiff, not its salespersons.  Once again, Plaintiff lacks standing to sue defendants.

7.    I have emailed Plaintiff's Complaint to Judge Conti's chambers.

The undersigned hereby declares under penalty of perjury that the foregoing is true and correct under the laws of the State of California and executes this Declaration on April 25, 2008 in San Jose, CA.

/sd/ Matthew Rafat
Matthew Rafat, Esq.

I declare that:

I am and was at the time of service of the papers herein a resident of the State of California and over the age of eighteen years and am not a party to this action; my business address is PO Box 111351, Campbell, California 95011. On **April 25, 2008**, I caused to be served the following document(s):

1.      DEFENDANTS' SILVA, MCKEE, AND WANG's 12(b)(6) MOTION

[ X ] BY MAIL: (CCP 1013 and 1013a) and EMAIL

    [ X ]  By placing the documents(s) listed above for **FIRST CLASS MAIL** delivery in a sealed envelope, addressed as set forth below, and placing the envelope for collection and mailing in the place designated for such in our offices, following ordinary business practices thereof to:

    Jefferson Stamp
    15650-A Vineyard Blvd.
    #146
    Morgan Hill, CA 95037
    jtstamp2002@yahoo.com

    Brad Jones, Esq.
    Needham, Davis, Kepner & Young, LLP
    1960 THE ALAMEDA STE 210
    SAN JOSE CA  95126-1451
    bjones@ndkylaw.com

    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    [X] BY PERSONAL DELIVERY:

    Stephanie O. Sparks
    60 South Market Street, Suite 1400
    San Jose, CA  95113-2396
    SOS@hogefenton.com

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **April 25, 2008** at San Jose, California.


/sd/ Matthew Rafat
Matthew Rafat