MATTHEW RAFAT (SBN 221577)
PO Box 111351
Campbell, CA 95011-1351
408-871-2899

Attorney for Defendants
Benjamin Silva, Matthew McKee,
and Tsu Hsien "Steve" Wang

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TVIA, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>BENJAMIN SILVA, an individual TSU HSIEN "STEVE WANG", an individual; MATTHEW MCKEE, an individual; DIANE BJORKSTROM, an individual; MICHAEL BUTTRICK, an individual; YK SYNNET, a Japanese Corporation; AND DOES 1 to 50, inclusive,<br><br>    Defendants. | CASE NO: C 08 01908 SC<br><br>DEFENDANTS' SILVA, MCKEE, AND WANG's OPPOSITION TO PLAINTIFF TVIA'S MOTION TO REMAND<br><br>July 11, 2008<br>9:00AM<br>Hon. Judge Samuel Conti<br>Courtroom 1 |

1

# TABLE OF CONTENTS

Issues and Introduction…………………………………………………………………..……4

A.   Defendant's Counsel Conceded Issues 1-3 in a May 6, 2008 Email to
      Plaintiff's Counsel ……………………………..……………………………………………...6

B.   Artful Pleading Cannot Trump Federal Higher Pleading Standards When Congress Clearly
      Intended that Lawsuits involving Shareholders Alleging a Financial Loss on the Open Market
      be Brought in Federal Court……………………..…………………………………………7

1.   *15 U.S.C. § 78aa Mandates Exclusive Federal Jurisdiction of Securities Fraud
     Claims*…..……………………………………………………………………………………....7

2.   *Plaintiff Has Made 10b-5 allegations in its Complaint, Requiring Federal Jurisdiction*…….8

3.   The *9th Circuit Ruled the Court Should Consider "All Factors" in Deciding Whether Case is
     Removable* …...………………………………………………………………………………10

C.   "Artful Pleading" Doctrine Applies…..……………………………………………………11

D.   Defendants Properly Complied with 15 USC 1446……………………………………….12

E.   Equitable Estoppel Prevents Plaintiff from Denying its Complaint involves Securities
      Litigation …………………………………………………………………………….......13

F.   Plaintiff's Cited Cases Can be Distinguished and None are on Point……………………….14

G.   Public Policy Favors Result in Favor of Defendants, as No Securities Aims are Furthered by
      Allowing this Lawsuit to Continue, Whether in State or Federal Court……………………..16

H.   Plaintiff Has Filed a "Covered Class Action" Based on Its Own Catch-All Calculation of
      Damages………………………………………………………………………………...17

I.   SLUSA Also Provides Federal Jurisdiction ……………………………………………….19

Opposition to Plaintiff's Motion to Remand                                          TVIA, Inc. v. Silva., et al.

1

## TABLE OF AUTHORITIES

2  *Lippitt v. Raymond James Fin. Serv.*, 340 F.3d 1033, 1041 (9th Cir.2003)............................4

3  *McClure v. Borne Chem. Co.*, 292 F.2d 824, 833 (3d Cir. 1961)………………………….....7

4  *United States v. O'Hagan*, 521 U.S. 642, 650 (1997)………………………………….....8, 10

5  *Chiarella* v. *United States,* 445 U.S. 222, 228 (1980)………………………………………8

6  *Hansen v. Blue Cross of California*, 891 F.2d 1384, 1389 (9th Cir. 1989) ………………....11

7  *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 860 (9th Cir. 1987)…………………….............11

8  *Franchise Tax Board of California v. Construction Laborers Vacation Trust,*
9  463 U.S. 1 (1983)……………………………………………………………………………11

10  *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212
11  (9th Cir. 1998)……………………………………………………………………………….12

12  *Precision Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106
(N.D. Cal. 2002)……………………………………………………………………………12

13  *Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th Cir. 1985)………………………….....12

14  *Hurd v. Dimento and Sullivan*, 440 F.2d 1322 (1st Cir. 1971) ……..……………………….13

15  *Dickerson v. Colgrove*, 100 U.S. 578, 25 L. Ed. 618 (1879)……..…………………………13

16  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 126 S. Ct. 1503 (2006)…………..……..14

17  *U.S. Mortg., Inc. v. Jensen (Saxon)*, 494 F.3d 833, 841 (9th Cir. 2007)…………………….17

18

19

20

21

22

23

24

25

26

27

28

Issues

1.      Does securities pre-emption exist under the Securities Act of 1934, more specifically Rule 10b-5, where a plaintiff sues defendants for trading its shares on the public market using "information…not generally available to the public" (Complaint: 27: 10) that "would significantly affect the market price of the Company's securities" (Id. 27: 14)?

1a.     After applying the tests the 9th Circuit promulgated in *Lippitt v. Raymond James Fin. Serv.*, 340 F.3d 1033, 1041 (9th Cir.2003), does Plaintiff's Complaint, which alleges securities fraud, fall under any of the following three tests: (1) Does it involve the complete preemption doctrine; (2) Does it implicate a substantial federal question; or (3) Does it involve a case that where the claim is necessarily federal?   To borrow the words of the Honorable Judge Goodwin, has Plaintiff "artfully phrased a federal claim by dressing it in state law attire"?

2.      Can an issuer of stock basing its damages on general shareholder loss in the market allege insider trading without necessarily stepping into the shoes of a lead representation to sue for alleged securities fraud, or does the "misappropriation" theory of securities fraud under 10(b)(5) allow federal jurisdiction without involving SLUSA and the PSLRA?
3.      If the Court does not agree that securities pre-emption exists, then should Defendants or their counsel be sanctioned over 8,000 dollars, even though they agreed—literally with a few hours of receiving a short email from Plaintiff's outside counsel about a possible motion to remand—to voluntarily remand but never received a stipulation from Plaintiff's counsel?

Defendants will examine Issues 1, 1a, and 2 in this Opposition.  Issue 3 will be discussed in a separate Opposition to Plaintiff's Motion for Sanctions.

Introduction

Plaintiff TVIA filed two separate motions: (1) remand this action to state court; and (2) sanctions against Defendants' counsel and his clients for over $8,000.  Due to Plaintiff's failure to draft a stipulation to remand to state court voluntarily, offered on May 1, 2008, this Court has an opportunity to issue a ruling that furthers Congress' aims in reducing frivolous securities litigation.

Plaintiff argues its Complaint, which Defendants' counsel emailed directly to Judge Conti, contains no federal question.  Plaintiff's Complaint for insider trading is necessarily a lawsuit on behalf of public shareholders.  Defendants paid Plaintiff directly to exercise all options granted to them.  As a result, only public shareholders would have suffered any actual damages due to defendants' alleged insider trading.  Companies and issuers of stock suffer no actual damages when public shareholders trade their shares.

In addition, the "misappropriation theory" of securities fraud does not necessarily match the type of allegations Plaintiff states for reasons set forth below. Plaintiff here is not clear in its allegations describing the inside information involved, but the Complaint currently contains no allegation states that defendants took information only known to the CEO and tried to use it for their advantage. In any case, if this Court may find that securities fraud arises under a "misappropriation" theory, such a theory would grant this Court jurisdiction under 10b-5.

"Artful pleading" should not allow Plaintiff to evade laws designed to limit frivolous securities litigation. In addition, Plaintiff itself acknowledged that securities fraud is part of their complaint when it asked the SEC to become involved in this case. David Alexander, Esq, of McDermott, Will & Emery, is handling this phase of litigation. The SEC has not discovered any wrongdoing involving Defendants.

If the Court agrees Plaintiff is using "artful pleading" to circumvent the higher pleading standards Congress passed to prevent frivolous, costly securities litigation, then this Court may still remand this case after ruling in favor of Plaintiff's 12(b)(6) motion. If the securities fraud claim is dismissed, no other federal claims exist, and this Court would not have jurisdiction. However, if this Court accepts jurisdiction and does not grant Defendants' 12(b)(6) motion because it finds that the Complaint is alleging securities fraud under a "misappropriation" theory, this case would proceed in federal court (after the PSLRA pleading standards and mandatory sanctions are satisfied).

We will examine each of Plaintiff's issues in the order they were presented to the Court:

1. Silva, Wang, and McKee ("Defendants") removed this case from the Superior Court for the State of California on April 9, 2008, citing "Diversity Jurisdiction and Preemption Under Securities Laws" as a bases [sic] for subject matter jurisdiction;

2. TVIA and at least three of the Defendants are residents of the State of California;

3. Even if there were diversity, a defendant cannot remove a case in his or her home state;

4. The First Amended Complaint, which the Defendants did not attach to the Notice of Removal, only asserts causes of action arising under state law;

5. Only three of the Defendants joined in the Notice of Removal;

6. The Defendants did not attach "all process, pleadings, and orders" served on the Defendants to the Notice of Removal

A.    **Defendant's Counsel Conceded Issues 1-3 in a May 6, 2008 Email to Plaintiff's Counsel**

On May 6, 2008, after several attempts to get Plaintiff's counsel, Gregory Charles, to voluntarily remand to state court failed, Defendants' counsel informed Mr. Charles the basis for removal was securities law: "On a moving forward basis, if you continue to refuse to do what you promised on May 1, 2008 [i.e., sign a proposed stipulation or offer your own], and not sign and return to me the stipulation…your motion to remand must focus on securities law…I do not contest that defendants lack diversity jurisdiction." See Declaration of Matthew Rafat, paragraph 3, Exhibit 1. Plaintiff's intentional failure to focus its motion on securities preemption is surprising, and also demonstrates a pattern of refusing to cooperate when it is in the best interests of the court and parties to narrow the issues.

The Notice of Removal stated in the caption that Defendants were relying upon securities laws preemption. See Declaration of Matthew Rafat, Exhibit 2. Defendants' Notice of Removal named securities fraud as one basis for pre-emption. The caption of the Notice stated, "PREEMPTION UNDER SECURITIES LAWS." The notice itself stated, "This action is a civil action of which this Court has jurisdiction under the pre-emption doctrine." While a removal notice may contain statutory references, federal preemption is a doctrine, not a statute, and the notice filed was sufficient to place a reasonable person on notice that securities pre-emption was a basis for removal. Even if Plaintiff claims the notice itself was not clear, despite its ALL-CAPS form and bold typeface stating "**PREEMPTION UNDER SECURITIES LAWS,**" Defendant's counsel specified to Plaintiff's counsel in an email dated May 6, 2008 that diversity jurisdiction was not contested, and not required for this Court to have jurisdiction:

> [T]he PSLRA **and securities law** appear to **pre-empt** such claims when Plaintiff alleges insider trading that affects the public marketplace and public shareholders. I do not contest that defendants lack diversity jurisdiction. See Declaration of Matthew Rafat, Ex. 1.

As such, it is undisputed Plaintiff had substantive notice of the different bases for removal. According to the clerk accepting the notice of removal, the District Court's internal assigning system transferred the case to San Francisco as a result of Defendants' express designation that this case involved securities law. Thus, from the very beginning, Defendants clearly specified that general securities pre-emption was a basis for removal.

B.    **Artful Pleading Cannot Trump Federal Higher Pleading Standards When Congress Clearly Intended that Lawsuits involving Shareholders Alleging a Financial Loss on the Open Market be Brought in Federal Court**

Plaintiff TVIA is a publicly traded company. The ticker symbol is "TVIA" and it trades as a "pink sheet" company. See http://finance.yahoo.com/q?s=TVIA.PK. Defendants are former employees of TVIA.

1.    *15 U.S.C. § 78aa Mandates Exclusive Federal Jurisdiction of Securities Fraud Claims*

Having disposed of the first three issues Plaintiff raises, Defendants address Issue #4: "The First Amended Complaint…only asserts causes of action arising under state law." This is the main contested issue between the parties.

Section 27 of the Act, now codified at 15 U.S.C. § 78aa, provides in relevant part:

> The district courts of the United States . . . <u>shall</u> have <u>exclusive jurisdiction</u> of violations of this chapter or the rules and regulations thereunder, and of <u>all suits</u> in equity <u>and actions at law</u> brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. [Emphasis added]

In short, Plaintiff's lawsuit is pre-empted by the 1934 Exchange Act, more specifically, Section 10(b) (see 15 U.S.C. §§ 78(j), 78i(e) and 78r(b)) if it accuses defendants of securities fraud. While there are no cases on point relating to whether California Corporations Code § 25402 is specifically pre-empted in all securities fraud cases, this broad issue is not before the Court. The only issue here is whether Plaintiff can allege securities fraud covered under Rule 10(b)-5, 15 U.S.C. §§ 78i(e) and 78r(b) without being subject to exclusive federal jurisdiction as stated in 15 USC § 78aa.

The federal courts have been consistent on the issue of exclusive jurisdiction. See *McClure v. Borne Chem. Co.*, 292 F.2d 824, 833 (3d Cir. 1961) ("That congress intended uniform enforcement of rights arising under The Securities Exchange Act of 1934 is indicated strongly by the fact that it gave exclusive jurisdiction to the United States courts of any suit brought to enforce the duties or liabilities created by the Act.")  See Section 27, 1934 Securities Exchange Act, cited in full, *infra*.

    2.    *Plaintiff Has Made 10b-5 allegations in its Complaint, Requiring Federal Jurisdiction*

Much of Plaintiff's Complaint is written in a narrative, free verse style.  However, the allegations, which start on page 27 of the Complaint, show Plaintiff is alleging securities fraud covered by 10b-5 against Defendants.  Thus, the dispositive question is whether the Exchange Act of 1934, which includes Rule 10b-5 (78j), provides "the exclusive cause of action" for securities fraud as alleged in Plaintiff's Complaint.  If so, then the cause of action necessarily arises under federal law and the case is removable.

Plaintiff's Complaint lists the classic allegations for a 10b-5 case: defendants used inside information, not generally known to the public, and as a result, led shareholders to lose monies on the public securities markets.  The definition of "insider trading," as stated by the U.S. Supreme Court, mirrors the allegations in Plaintiff's complaint.

See U.S. Supreme Court *O'Hagan* definition of insider trading:

> Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis of **material, nonpublic information**. Trading on such information qualifies as a "deceptive device" under §10(b), we have affirmed, because "a **relationship** of trust and confidence [exists] between the shareholders of a corporation and those insiders who have obtained **confidential information by reason of their position with that corporation**." *Chiarella* v. *United States,* 445 U.S. 222, 228 (1980). That relationship, we recognized, "gives rise to a duty to disclose [or to abstain from trading] because of the `necessity of preventing a corporate insider from . . . tak[ing] unfair advantage of . . . uninformed . . . stockholders.' " *Id.*, at 228-229 (citation omitted)…

> The "misappropriation theory" holds that a person commits fraud "in connection with" a securities transaction, and thereby violates §10(b) and Rule 10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information.

Under this theory, a fiduciary's undisclosed, self serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information. In lieu of premising liability on a fiduciary relationship between company insider and purchaser or seller of the company's stock, the misappropriation theory premises liability on a fiduciary turned trader's deception of those who entrusted him with access to confidential information.

The two theories are complementary, each addressing efforts to capitalize on nonpublic information through the purchase or sale of securities. The classical theory targets a corporate insider's breach of duty to shareholders with whom the insider transacts; the misappropriation theory outlaws trading on the basis of nonpublic information by a corporate "outsider" in breach of a duty owed not to a trading party, but to the source of the information. [emphasis added] *United States v. O'Hagan*, 521 U.S. 642, 650 (1997), at 650-652.

The Supreme Court also lists the definition of 10b-5 itself:

In pertinent part, §10(b) of the Exchange Act provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange- . . . . . "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). *Id.*

15 U.S.C. § 78j(b) is under 15 U.S.C. § 78aa, which expressly states that federal courts have exclusive jurisdiction over securities fraud claims. The similarity between Plaintiff's allegations and the U.S. Supreme Court definition of insider trading is almost exact:

See Complaint, 27: 6-10:

Silva, McKee, and Wang, and each of them, **by reason of their positions and relationship with the Company**, had **access to material inside information** about the Company relating to…wrongdoing…which resulted in artificial and overstated revenues for the Company, and which **information was not generally known to the public**.

See Complaint, 27: 11-17:

Silva, McKee, and Wang…**sold securities** of the Company…when they **knew that their inside information** about the Company, which was **not generally available to the public**, would **significantly affect the market** price of the Company's securities.

9

At the time of the sale of the Company's securities…[Defendants] did not have any reason to believe the person or persons buying from them were also in possession of the information.

Plaintiff's allegations necessarily involve securities fraud as covered by Rule 10b-5. Plaintiff alleges that Defendants sold securities based on inside information not generally available to the public that would significantly affect the public market. Thus, Plaintiff is necessarily invoking the definition of insider trading under the exclusive provisions of 15 U.S.C. § 78j(b): that defendants used or employed, in connection with the purchase or sale of a public company's shares registered on a national securities exchange, a manipulative or deceptive device or contrivance in contravention of such rules and regulations.

There are other significant factors—besides the similarity of the definitions and Plaintiff's allegations—that the Court may consider in determining whether Plaintiff's Complaint falls within the ambit of the 1934 Securities Act. Plaintiff is suing Defendants for "Breach of Fiduciary Duty of Loyalty" (Complaint, 29: 12-15), and "Breach of Fiduciary Duty of Care" (Id. 30: 10-13). The Supreme Court's definition of what falls under 10b-5's exclusive jurisdiction includes "a fiduciary's undisclosed, self serving use of a principal's information to purchase or sell securities, in **breach of a duty of loyalty** and confidentiality." *United States v. O'Hagan*, 521 U.S. 642 (1997) (emphasis added). Thus, the 1934 Act covers four of the 5 causes of action pled in the Complaint.

The allegations and causes of action (counts) in the Complaint are the same as the type of conduct the U.S. Supreme Court and Congress intend to preempt. Therefore, federal jurisdiction exists.

3.    The *9th Circuit Ruled the Court Should Consider "All Factors" in Deciding Whether Case is Removable*

As the 9th Circuit in *Lippitt v. Raymond James Fin. Serv.*, 340 F.3d 1033, 1041 (9th Cir.2003) stated,

In addition to state law claims subject to complete federal preemption, the artful pleading doctrine allows federal courts to retain jurisdiction over state law claims that implicate a substantial federal question. A state

10

law claim falls within this second category when: (1) "a substantial, disputed question of federal law is a *necessary* element of . . . the well-pleaded state claim," *Rains,* 80 F.3d at 345 or the claim is an "inherently federal claim" articulated in state-law terms, *Brennan,* 134 F.3d at 1409; or (2) "the right to relief depends on the resolution of a substantial, disputed federal question," *ARCO,* 213 F.3d at 1114. A careful reading of artful pleading cases shows that no specific recipe exists for a court to alchemize a state claim into a federal claim — a court **must** look at a complex group of factors in any particular case to decide whether a state claim actually "arises" under federal law.

The 9th Circuit directs the court to evaluate a Plaintiff's Complaint as a whole in determining whether its claims are those Congress has sought to keep in federal courts. With respect to whether Plaintiff's case involves a substantial, disputed federal question, Defendants believe it does. Defendants do not know why a state court should rule on an inherently federal matter that necessarily involves a question of what constitutes insider trading.

Plaintiff's Complaint raises necessarily involves an examination of the reach of federal securities laws, more specifically 15 U.S.C. §§ 78(j). Thus, the Court "must" deal with the following question: whether an issuer of stock has standing to sue its ex-employees for insider trading when the issuer has directly sold company stock to the ex-employees and received fair and reasonable value for the company stock. Such an inquiry necessarily raises a federal question, because the 1934 Securities Act must be invoked, at least initially, to analyze Plaintiff's claims as set forth in its Complaint.

Plaintiff has done exactly what the 9th Circuit disallows—it has filed an "inherently federal claim" articulated in state law terms in order to avoid federal jurisdiction and deny defendants the possible cost-savings measure of the PSLRA.

C.    "**Artful Pleading" Doctrine Applies**

"Although the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim.'" *Hansen v. Blue Cross of California*, 891 F.2d 1384, 1389 (9th Cir. 1989) (quoting *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 860 (9th Cir. 1987)). Under the artful pleading doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."

11

*Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1 at 22 (1983); see also *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998) ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law."). The artful pleading doctrine allows courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim." *Precision Pay Phones v. Qwest Communications Corp.*, 210 F.Supp.2d 1106, 1112, 1123 (N.D. Cal. 2002) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th Cir. 1985)).

D.    **Defendants Properly Complied with 15 USC Section 1446**

Defendants substantially and substantively complied with the provisions of 15 U.S.C. Section 1446(a).  They filed in the District Court of the United States a Notice of Removal signed pursuant to Rule 11 of the Fed. Rules of Civ. Proc. containing a short and plain statement of the grounds for removal, along with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.  See Declaration of Matthew Rafat, Exhibit 2.

Plaintiff seems to base its procedural arguments on the allegation its own Complaint was not attached to the notice of removal. However, there is no prejudice to Plaintiff, because Plaintiff's in-house counsel was counsel of record at the time of the removal and drafted and signed the Complaint. As such, Mr. Stamp had a copy of his own Complaint.  At one point, outside counsel even claimed the Notice of Removal was unsigned, but after receiving an email denying that accusation, Plaintiff never raised it again.  Plaintiff's other technical argument is another defendant, Bjorkstrom, did not remove the case.  The plain language of 28 U.S.C. Sectoin 1446 allows even a single defendant to remove the case.  "A defendant…desiring to remove any civil action."  28 U.S.C. 1446(a). Bjorkstrom does not oppose the request for removal.  See Declaration of Rafat, paragraph 5.  Plaintiff is arguing form over substance in an attempt to deprive Defendants of the protection of federal court and Congress' aim in reducing frivolous securities litigation.

E.    **Equitable Estoppel Prevents Plaintiff from Denying its Complaint involves Securities Litigation**

Since Plaintiff raised minor procedural issues, Defendants also raise a procedural issue. However, unlike Plaintiff's generalized appeal to form over substance, Defendants rely on substantive rulings that prevent a party from taking two opposite positions at once.  In this case, Plaintiff requested a federal SEC investigation into the same securities fraud it alleges in its Complaint, yet denies in its Motion for Removal federal securities law is involved.

During Defendant "Steve" Wang's deposition in a separate state case filed by Plaintiff, Mr. Jefferson Stamp, Plaintiff's original lead counsel on this case, led a process server into the deposition and served Defendant Wang with an SEC subpoena.  Conversations with the SEC attorney assigned to the case establish Plaintiff has asked the SEC to get involved in this matter because of an allegation of insider trading.  See <u>Declaration of Matthew Rafat</u>, paragraph 6. It is contradictory for the same company to ask the SEC to get involved in an insider trading case and then on the other hand, deny that their insider trading claims are at least partly federal in nature.  More to the point, such a contradiction estops Plaintiff from seeking federal assistance for the exact same claims while arguing to this federal court their claims have nothing to do with federal securities laws.

The party making a representation is denied, by virtue of equitable estoppel, the right to plead or prove the existence of facts contrary to his representations.  See *Hurd v. Dimento and Sullivan*, 440 F.2d 1322 (1st Cir. 1971).  The doctrine preventing the denial is known as equitable estoppel or estoppel *in pais*. See *Dickerson v. Colgrove*, 100 U.S. 578, 25 L. Ed. 618 (1879) ("The estoppel here relied on is known as an equitable estoppel or estoppel in pais. The law upon the subject is well settled.")

If this Court is inclined to use a procedural doctrine, then the equitable estoppel doctrine should be considered to prevent Plaintiff from taking two inconsistent positions at the same time where a federal statute requires exclusive jurisdiction.  As set forth in Section 27 of the 1934 Securities Act:

13

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States **shall have exclusive jurisdiction of violations of this title or the rules and regulations hereunder, and of all suits in equity and actions at law brought to enforce any liability** or duty created by this title or the rules and regulations thereunder… Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations, may be brought in any such district… [emphasis added]

Once Plaintiff itself asked the SEC to become involved, its conduct revealed its belief that its insider trading claim involved federal securities laws. In fact, footnote 11 of *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 126 S. Ct. 1503, 1514 (2006), cited by Plaintiff, mirrors the situation here. The Supreme Court asserted pre-emption in <u>*Dabit*</u>: "Dabit's [separately filed] holder claims rested 'on the very same alleged series of transactions and occurrences asserted in the federal securities actions' filed against Merrill Lynch." Defendants will return to *Dabit* in the section below.

F.  **Plaintiff's Cited Cases Can be Distinguished and None are on Point**

Plaintiff's counsel Gregory Charles makes much of the fact that Defendants' counsel stated in an earlier declaration—before any of Plaintiff's papers were drafted or filed with the court—there was no case on point relating to federal pre-emption with respect to California Corporations Code ("CCC") 25402 and 25502.5. See Plaintiff's Motion to Remand, page 4, lines 7-8. Defendants find only two cases related to CCC Section 25402. One dealt with the "internal affairs doctrine," which is not at issue here; the other dealt with a challenge to insurers' denial of coverage for an underlying shareholder class action arising from plaintiffs' merger, reversing a summary judgment on the issue of whether a settlement was entirely restitutionary relief. The only two CCC sections Plaintiff cited in its Complaint were sections CCC 25402 and 25502.5.

All of Plaintiff's cited cases actually support pre-emption. Plaintiff surprisingly raises *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 126 S. Ct. 1503, 1514 (2006). First, that case dealt with a class action case brought against a former employer-broker. In that case, an individual was suing a former employer. For that reason alone, it is distinguishable. Also, the U.S. Supreme Court affirmed a *broader* view of pre-emption, stating,

> The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated…Securities and Exchange Commission (SEC) Rule 10b–5, 17 CFR §240.10b–5 (2005), promulgated in 1942 pursuant to §10(b) of the 1934 Act, 15 U. S. C. §78j(b), is an important part of that regulatory scheme. The Rule, like §10(b) itself, broadly prohibits deception, misrepresentation, and fraud…
>
> Moreover, when this Court *has* sought to give meaning to the phrase in the context of §10(b) and Rule 10b–5, it has espoused a broad interpretation.
>
> Notably, this broader interpretation of the statutory language comports with the longstanding views of the SEC.

(Defendants note *Dabit*, which Plaintiff relies upon, cites *O'Hagan*, which Plaintiffs use to establish their definition of insider trading.)

Plaintiff miscites *Dabit* as well as its holding. The court did mention an individual right of action: "Although no such authority is expressly granted to private individuals injured by securities fraud, in 1946 . . . the United States District Court . . . , relying on "the general purpose" of the Rule, recognized an implied right of action thereunder.

Plaintiff is confusing the issues. There are two separate issues involved in securities preemption. (1) Does the 1934 Act exclusively pre-empt the type of claims brought by Plaintiff? (2) Does the Complaint fall under the definition of a "covered class action" as set forth in 15 U.S.C. §78bb(f)(2), in which case the PSLRA would apply? Plaintiff has mistakenly argued securities preemption can only be achieved through covered class action status. Its cases are therefore inapposite.

Plaintiff had clear notice that securities preemption was the key issue in removal. See Declaration of Matthew Rafat, paragraph 3 and Exhibit 1 (Notice stated, in bold and capital letters, "**PREEMPTION UNDER SECURITIES LAWS**," and stated, "This action is a civil action of which this Court has jurisdiction under the pre-emption doctrine…").

Plaintiff also cites *U.S. Mortg., Inc. v. Jensen (Saxon),* 494 F.3d 833, 841 (9th Cir. 2007), on page 4 of its Motion for Sanctions, stating: "The fact that the PSLRA addresses federal securities

claims further demonstrates the Defendants' bad faith." Plaintiff agrees if federal securities claims are implicated in its Complaint, there may be a basis for the PSLRA. As shown above, Plaintiff's complaint does implicate an exclusive area of federal securities preemption.

*Jensen* also found preemption applied, and held that removal was proper. With respect to the facts of the case at bar, the *Jensen* facts are distinguishable. *Jensen* did not involve an issuer of stock that sold its own shares to ex-employees and then sued them later for securities fraud. The separate issue before this Court is whether a public corporation that sues ex-employees for securities fraud relating to their acts on the public market necessarily falls under a "covered class action," thereby activating the PSLRA. This is discussed *infra*.

G. **Public Policy Favors Result in Favor of Defendants, as No Securities Aims are Furthered by Allowing this Lawsuit to Continue, Whether in State or Federal Court**

While securities litigation may certainly be brought by public shareholders to avenge losses on the public markets and to ensure the "efficient market hypothesis" is not merely an academic proposition, there is no such public policy favoring the kind of Complaint Plaintiff brings.

First, Plaintiff is suing non-officers for securities fraud. It is suing a Vice President (Ben Silva, who may be an officer), but also two "sales managers" (Matthew McKee and Steve Wang). See Complaint, page 4, lines 19-24, listing Defendants' job titles. It is difficult to see what public policy is advanced by suing employees not sufficiently elevated in the corporate hierarchy to receive valuable inside information that would affect a company's share price. Indeed, Defendants found no case where a public corporation sues non-officers for securities fraud. Typically, the SEC files suit, not the corporation itself. In fact, the SEC is currently investigating this case at Plaintiff's behest. Thus, if this Court dismisses this lawsuit, a remedy is available if insider trading occurred.

Second, if this Court allows this case to continue in state court, it would give a green light to companies to go after all ex-employees who traded their stock at some point during their employment. Plaintiff asks this Court to ignore the stricter federal pleading standards for securities litigation and to forsake the exclusive securities fraud framework Congress enacted to prevent exactly

16

the kind of frivolous state court litigation now before this Court.  It makes no sense for Congress to pass numerous laws preventing frivolous securities litigation, only to have companies use their presumably greater resources to harass ex-employees and non-officers.

Indeed, the only public policy that would further Congressional aims is set forth in the *Jensen* opinion (*U.S. Mortg., Inc. v. Jensen (Saxon),* 494 F.3d 833 (9th Cir. 2007)):

> In 1995, Congress passed the PSLRA because it was distressed with the proliferation and cost of allegedly meritless federal securities class actions. The PSLRA sought to curb abusive and frivolous securities suits by imposing new procedural and substantive requirements.

H.    **Plaintiff Has Filed a "Covered Class Action" Based on Its Own Calculation of Damages**

While Defendants do not have to allege a "covered class action" to have a basis for removal under securities pre-emption, the parties have asked this Court to determine whether Plaintiff's lawsuit is covered by PSLRA.

Under 15 U.S.C. Ch 2B, § 78bb(f)(5)(B)(II), the PSLRA applies to a "covered class action." A covered class action is any single lawsuit in which "**one** or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members."

Nowhere in Plaintiff's Complaint does it specifically list damages suffered only by the Plaintiff.  The only damages specified in the Complaint involved an estimate of *all* shareholder loss as a result of alleged fraud.  Plaintiff's Complaint is essentially a motion asking that it be named the lead representative in its action relating to securities fraud.  Plaintiff will no doubt argue that it is seeking damages only on behalf of the corporation, not on behalf of public shareholders; however, where a plaintiff alleges damages based on fraud that caused a diminution in a company's stock price, the plaintiff is necessarily alleging a securities fraud action where it seeks "to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated."  See Complaint, page 28, lines 3-6:

> The difference between the sales price and the market value after disclosure and absorption of the information [on the public market], equals $594,062…Silva is liable…for…$1,782,186.00.

Plaintiff's stated source of damages is the difference in price of what *all* shareholders lost after alleged securities fraud.  Plaintiff's Complaint lacks information relating a specific number of shares it owns or the basis (buy price) of stock, or any other information allowing a reader to ascertain what damages Plaintiff allegedly suffered. As a result, Plaintiff's own calculation of damages shows that Plaintiff intends to be a lead representative in a class action so it can recover the entire diminution in share price that all shareholders lost on the public market.  There is no other way to arrive at the alleged loss of $594,062 without Plaintiff speaking on behalf of the class of investors that lost money on the public market.  Nowhere in the Complaint does Plaintiff list how many shares it owns, or how many shares it traded on the day the alleged fraud caused its stock price to decline.  Plaintiff expressly calculates damages as if it were stepping into the shoes of *all* public shareholders, seeking to recover all damages caused to them.  It is contradictory to seek damages on behalf of all public shareholders and yet claim not to be a class action representative.

Plaintiff makes the same damage calculations for all the other defendants.  With respect to my clients, Plaintiff again appeals on behalf of all public shareholders:

See Complaint, page 28, lines 10-13:

> The difference between the sales price and the market value after disclosure and absorption of the information [on the public market], equals $172,037.51…McKee is liable…for…$516,112.53.

See Complaint, page 28, lines 16-21:

> The difference between the sales price and the market value after disclosure and absorption of the information [on the public market], equals $46,400…Wang is liable…for…$139,200.00.

Since Plaintiff was paid fair value for its options and suffered no damages as a result of insider trading, it should not be allowed to use artful pleading to escape Congress's intent to pre-empt lawsuits where a diminution in stock price is alleged due to fraud.

Under 15 U.S.C. Ch 2B, § 78bb(f)(2) (Removal of covered class actions), "Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), **shall** be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1)."  [Emphasis added]

I.    **SLUSA Also Provides Federal Jurisdiction**

SLUSA also applies to this case. The language of SLUSA, codified in Section 16(b) of the '33 Act, defines a "covered class action" as one "based upon the statutory or common law of any State or subdivision thereof" containing specified allegations in connection with the purchase or sale of a security.  The language is virtually identical to the PSLRA.  As shown above, Plaintiff's Complaint is necessarily a "covered class action" based on the way it has calculated the public's damages.

In addition, Plaintiff's complaint is <u>not</u> exclusively a derivative action.  A derivative action is composed of two distinct claims: (1) the stockholders' claim against the corporation for its refusal to sue in its own name, and (2) the underlying claim put forward for the corporation's benefit.  Here, the corporation is suing in its own name; therefore, its complaint cannot be said to be "exclusively" derivative.

For all the aforementioned reasons, this Court should exercise jurisdiction under securities pre-emption doctrine, as well as the PSLRA.

Dated: June 19, 2008                    /sd/ Matthew Rafat
                                        MATTHEW RAFAT
                                        LAW OFFICE OF MATTHEW RAFAT
                                        Attorney for Defendants McKee, Wang, Silva

I declare that:

I am and was at the time of service of the papers herein a resident of the State of California and over the age of eighteen years and am not a party to this action; my business address is PO Box 111351, Campbell, California 95011.  On **June 20, 2008**, I caused to be served the following document(s):

1.  DEFENDANTS' SILVA, MCKEE, AND WANG's OPPOSITION TO PLAINTIFF TVIA'S MOTION TO REMAND

[X] **BY EMAIL (parties agreed to accept service)**

Stephanie O. Sparks
60 South Market Street, Suite 1400
San Jose, CA  95113-2396
SOS@hogefenton.com

Brad Jones, Esq.
Needham, Davis, Kepner & Young, LLP
1960 THE ALAMEDA STE 210
SAN JOSE CA  95126-1451
bjones@ndkylaw.com

[X]     **BY E-FILING: to all other parties**

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.   Executed on **June 20, 2008** at San Jose, California.


/sd/ Matthew Rafat
Matthew Rafat

TVIA, Inc. v. Silva., et al.