GREGORY CHARLES, ESQ., BAR NO. 208583
CAMPEAU GOODSELL SMITH
440 North First Street, Ste. 100
San Jose, California 95112
Telephone: 408.295.9555
Facsimile: 408.852.0233
gcharles@campeaulaw.com
*Counsel for Tvia, Inc.*

UNITED STATES DISTRICT COURT

NORTHEN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TVIA, INC. <br><br> Plaintiff, <br><br> vs. <br><br> BENJAMIN SILVA, TSU HSIEN "STEVE" WANG, MATTHEW MCKEE, DIANE BJORKSTROM MICHAEL BUTTRICK, YK SYNNET, A JAPANESE CORPORATION AND DOES 1 TO 100, INCLUSIVE | Case No. 08-cv-01908-SC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS** <br><br> Judge: Hon. Samuel Conti <br><br> Hearing: July 11, 2008 <br> Time: 9:00 a.m. <br> Place: Courtroom 1 |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ........................................................................................................................ 4

    A.    This Court does not have jurisdiction over this case and therefore cannot adjudicate the Motion. ......................................................................... 4

    B.    Standard applicable to the instant motion. ............................................... 4

    C.    Tvia has properly pleaded a cause of action for Insider Trading under California law. ............................................................................................. 5

    D.    Tvia has properly pleaded causes of action for Breach of Fiduciary Duty of Loyalty and Breach of Fiduciary Duty of Care against the Defendants under California law. ............................................................. 7

    E.    Tvia has properly pleaded a cause of action for Fraud against the Defendants under California law. ............................................................... 9

    F.    Tvia has properly pleaded a cause of action for Unjust Enrichment against the Defendants under California law. ........................................ 10

    G.    The Court Should not consider the Declaration of Matthew Rafat, Esq. ............................................................................................................. 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399 .................................................. 9

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .......................................................... 5

*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310 ............................................. 11

*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657 ................................................... 11

*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34 ....................................................... 8

*Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) ........................................................... 5

*J. C. Peacock, Inc. v. Hasko*, (1961) 16 Cal.Rptr. 518 ............................................................... 3, 12

*Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993) ................................................................. 5

*Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415 ............... 11

*Parks Sch. of Business v. Symington*, 51 F.3rd 1480 (9th Cir.1995) ............................................. 4

*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093 .................................................................................. 8

*Sparling v. Daou*, 411 F.3d 1006 (9th Cir.2005) ........................................................................... 5

*Special Investments, Inc. v. Aero Air, Inc.*, 360 F.3d 989 (9th Cir. 2004) ..................................... 4

*Stokes v. Dole Nut Co.* (1995) 41 Cal.App.4th 285 ....................................................................... 9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) .............................................................. 5

*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 51 ..................................................... 10

*United States v. LSL Biotechs.*, 379 F.3d 672 (9th Cir.2004) ...................................................... 13

*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25 ...................................................................... 8

**Statutes**

Cal. Civ. Code §1571 ....................................................................................................................... 9

Cal. Civ. Code §1573 ....................................................................................................................... 9

Cal. Corp. Code §25502.5 ......................................................................................................... 5, 6, 7

Cal. Corp. Code §25402 ............................................................................................................... 5, 6

\\

\\

\\

**Rules**

Fed. R. Civ. Pro. 8(a) ...................................................................................................................... 4

Fed. R. Civ. Pro. 9(b) ...................................................................................................................... 5

Fed. R. Civ. Pro. 12(b)(6) ........................................................................................................... 1, 4

Fed. R. Civ. Pro. 12(d)(1) ............................................................................................................. 12

**Treatises**

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 286, p. 315 ...................................... 9

**INTRODUCTION**

This matter is before the Court on a Motion to Dismiss pursuant to Fed. R. Civ. Pro. ("Rule") 12(b)(6) by Defendants Silva, Wang, and McKee ("Motion"). Like their patently improper removal of this case from the Superior Court, the instant Motion to Dismiss is a confused effort. Ordinarily, a defendant seeking to dismiss a case cites the elements of the plaintiff's cause of action and then argues that the plaintiff failed to plead facts that would entitle it to relief, if proven at trial. While the Defendants cite authority such as the *Papers of John Marshall*, the Motion does not discuss the elements of any cause of action pleaded by Tvia, Inc. ("Tvia") in its First Amended Complaint ("FAC"). One consideration, however, is important. Since the Court does not have subject matter jurisdiction over this case, it need not consider the merits of the Defendants' frivolous endeavor. Since Counsel for the Defendants refused to re-notice the Motion after hearing of the Motion to Remand, however, Tvia offers this opposition demonstrating that the Motion should be denied, if this Court had jurisdiction.

**STATEMENT OF FACTS**

The FAC alleges the following facts which are considered true for the purpose of the Motion.[1] Tvia's business includes the development and sale of display processors or "chips" for high definition LCD televisions. At all relevant times herein, Tvia's shares were publicly traded on the NASDAQ stock exchange (FAC, ¶1). The former sales team of Tvia, consisting of Defendants Silva, Wang, McKee and Buttrick (the "Sales Team"), engaged in a pattern and practice of entering into undisclosed side agreements with a number of "distributors" usually near the end of a quarter of Tvia's fiscal year. A side agreement would typically provide that the distributor would not have to pay in accordance with the terms of a written purchase order and/or had the right to return the inventory if it could not be sold (FAC, ¶2). Failing to disclose side agreements to Tvia constitutes a significant omission by the Sales Team because Tvia relies on the accuracy of its purchase orders in stating its revenue for a particular quarter in publicly filed financial statements. Tvia generally

---

[1] Although the Defendants did not attach the FAC to the Notice of Removal, it is included in the Request for Judicial Notice in support of the Motion to Remand.

1 recognized revenue upon shipment and a reasonable assurance of payment. A legitimate purchase order with no side agreement generally provides a reasonable assurance payment and a basis upon which Tvia's financial statements can be made. In turn, the public relies on the accuracy of Tvia's publicly filed financial statements when trading Tvia's stock (FAC, ¶3).

The Sales Team engaged in the practice of entering into undisclosed side agreements with distributors so that the distributors would more readily sign a purchase order and receive a shipment from Tvia. In this regard, the distributors were essentially acting as sham middlemen and were used by the Sales Team to fraudulently meet revenue goals for the purpose of triggering commission bonuses and stock option grants to themselves (FAC, ¶4).

When the sham middlemen did not pay per their undisclosed side agreements, the Sales Team and former CFO Diane Bjorkstrom directed payments from new customers to the accounts of the delinquent distributors in a blatant and intentional attempt to conceal the earlier sham transactions. Silva and Wang directed at least four of the new customers to wire funds in the approximate amount of $600,000.00 to Tvia to help cover the aging receivables of the delinquent distributors. Based on additional side agreements, the new customers believed they were either making a refundable deposit, securing guaranteed manufacturing and distribution rights, or had the right to return unsold product. The clandestine transactions directed by the Sales Team constituted an elaborate Ponzi Scheme (FAC, ¶5).

Silva and Wang, with assistance from McKee, concealed the new customers from Tvia and falsely represented that these new companies were paying agents or customers of the delinquent distributors. Former CFO Diane Bjorkstrom was aware the money was coming from different sources and approved the misapplication of funds (FAC, ¶7). The Sales Team actively concealed the side agreements, created and altered customer purchase orders, intentionally directed the money to the wrong accounts, used sham middlemen to inflate shipments within a particular quarter and also embezzled inventory. Each member of the Sales Team was actively involved in at least one major respect, including defendants Benjamin Silva, Matthew Mckee, Tzu Hsien "Steven" Wang and Michael Buttrick (FAC, ¶7).

\\

As a result of these actions by the Sales Team, and with the connivance and assistance of Bjorkstrom, more than half of Tvia's stated revenue from Q1 FY 2006 (quarter ended June 30, 2005) to Q2 FY 2007 (quarter ended September 30,2006) was improperly recognized in Tvia's publicly filed financial statements (FAC, ¶8).  The scheme was designed by the defendants as part of a conspiracy to defraud Tvia into paying the Sales Team commissions, bonuses and stock option grants that were tied to revenue goals.  As a result, the Sales Team improperly received more than $1 million in fraudulently obtained commissions and bonuses between 2005 and 2006 (FAC, ¶9).

In addition, the Sales Team was motivated by the potential for stock option gains and inflated Tvia's stock price.  The misapplication of funds to the delinquent accounts was part of a cover up which concealed the use of sham middlemen and delayed any reversal of revenue that might have impacted Tvia's stock price (FAC, ¶10).  When the Sales Team engaged in the sale of stock from their options, they unlawfully traded on inside information (*i.e.*, non-public material information) because they were the only ones who knew that Tvia's revenue had been artificially inflated through the use of the sham middlemen, the misapplication of funds and other wrong doing, as alleged herein.  In August 2006, Silva, Wang and McKee, made approximately $437,000 in gains from these unlawful stock transactions (FAC, ¶11).

After the discovery of the wrongdoing, Tvia incurred substantial costs of approximately $1.5 million in outside auditing and legal fees which were required to complete Tvia's restatement and Audit Committee investigation (FAC, ¶12).  The exercise of stock options and sale of stock by Silva, Wang and McKee, with knowledge of the side agreements, misapplication of funds and other concealed wrongdoing, constitutes a violation of California law prohibiting insider trading.  The wrongdoing of the defendants constitutes violations of the defendants' duties of loyalty and care as well as fraud (FAC, ¶13). Tvia seeks, among other things, (1) damages of approximately $2.4 million for insider trading violations pursuant to California Corporations Code § 25502.5, (2) forfeiture of the approximately $1 million in wrongfully obtained commissions and bonuses pursuant to *J.C. Peacock, Inc. v. Hasko, 196 Cal. App. 2d 353 (1961)*, and (3) damages of $1.5 million for the costs incurred during Tvia's restatement and Audit Committee investigation, which directly resulted from the defendants' disloyal and fraudulent conduct (FAC, ¶14).  By reason of

their positions as officers, employees and agents of Tvia, the defendants owed Tvia a fiduciary duty of loyalty which precluded them from placing their own interests, or the interests of others, above the interests of Tvia.

After these *introductory* allegations, the FAC enumerates seventy two factual paragraphs comprising twenty-two pages adding specific details to these already complete allegations.

## ARGUMENT

**A. This Court does not have jurisdiction over this case and therefore cannot adjudicate the Motion.**

Tvia filed this case in the Superior Court on February 1, 2008. The Plaintiff is a Delaware Corporation that maintains its principal place of business in Santa Clara County, California (R.J.N. in Support of Motion to Remand, Ex. 1). Defendants Silva, Wang, and McKee removed this case from the Superior Court for the State of California on April 9, 2008 citing "Diversity Jurisdiction and Preemption Under Securities Laws" as a bases for subject matter jurisdiction. As noted in the Motion to Remand, Tvia and at least three of the Defendants are residents of the State of California. Even if there were diversity, a defendant cannot remove a case in his or her home state. Further, the FAC which the Defendants did not attach to the Notice of Removal only asserts causes of action arising under state law. Since this Court does not have subject matter jurisdiction, it cannot address the merits of the Motion. *Special Investments, Inc. v. Aero Air, Inc.*, 360 F.3d 989 (9th Cir. 2004).

**B. Standard applicable to the instant motion.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Business v. Symington*, 51 F.3rd 1480, 1484 (9th Cir.1995). All material allegations of the complaint are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996). The minimum pleading requirement is set by Rule 8(a), requiring a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling*

1  *v. Daou*, 411 F.3d 1006, 1013 (9th Cir.2005); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir.
2  2002).

3        Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances
4  constituting fraud or mistake shall be stated with particularity." What this means is that allegations
5  of fraud must be "specific enough to give defendants notice of the particular misconduct which is
6  alleged to constitute the fraud charged so that they can defend against the charge and not just deny
7  that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993).  With
8  respect to each cause of action, Tvia satisfies these requirements.

    **C. Tvia has properly pleaded a cause of action for Insider Trading under California law.**

11        Applying this standard indicates that the Motion lacks any indication of either merit or
12  probable case.  For example, the first cause of action is based upon Cal. Corp. Code ("Section")
13  §25502.5 which is cited in the FAC.[2]  Section 25502.5 allows issuers of securities such as Tvia to
14  recover damages in an amount up to three times the amount of wrongful profits obtained by those
15  trading on insider information that is prohibited by Section 25402.[3]

16        In addition to the twenty six pages of factual allegations, the actual cause of action alleges
17  that Silva, McKee and Wang, by reason of their positions and relationship with Tvia, had access to

---

[2] Section 25502.5 states.

> Any person other than the issuer who violates Section 25402 shall be liable to the issuer of the security purchased or sold in violation of Section 25402 for damages in an amount up to three times the difference between the price at which the security was purchased or sold and the market value which the security would have had at the time of the purchase or sale if the information known to the defendant had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information and shall be liable to the issuer of the security or to a person who institutes an action under this section in the right of the issuer of the security for reasonable costs and attorney's fees.

[3] Section 25402 states.

> It is unlawful … for any person … whose relationship to the issuer gives him access, directly or indirectly, to material information about the issuer not generally available to the public, to purchase or sell any security of the issuer … when he knows material information about the issuer gained from such relationship which would significantly affect the market price of that security and which is not generally available to the public …

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
5

material inside information about Tvia relating to the undisclosed side agreements, misapplication of funds, altered purchase orders, and other wrongdoing by the Sales Team which resulted in artificial and overstated revenues for Tvia, and which information was not generally available to the public (FAC, ¶88).

On or about August 29, 2006, August 30, 2006, and August 31, 2006, Silva, McKee and Wang, sold securities of Tvia in this state when they knew that their inside information about Tvia, which was not generally available to the public, would significantly affect the market price of Tvia's securities (FAC, ¶89). At the time of their sale of Tvia's securities, Silva, McKee and, Wang did not have any reason to believe the person or persons buying from them were also in possession of the information (FAC, ¶90).

By reason of the foregoing, Defendants Silva, McKee and Wang, and each of them, have violated Section 25402 by selling Tvia's securities on inside information (FAC, ¶91). Pursuant to 25502.5, Tvia is entitled to damages in amount up to three times the difference between the price at which the securities were sold and the market value which the security would have had at the time of the sale if the information known to the defendants had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information (FAC, ¶92). By the time all of the wrongdoing by the Sales Team had been disclosed by Tvia, and a reasonable time had elapsed for the market to absorb the information, Tvia's stock was trading at approximately $0.04 per share (FAC, ¶93).

On August 29, 2006, and August 30, 2006, Silva sold 200,000 shares of Tvia's stock for an aggregate sales price of $602,062.00. The market value of the stock after disclosure and absorption of the information amounts to $0.04 per share or $8,000. The difference between (1) the sales price, and (2) the market value after disclosure and absorption of the information, equals $594,062. Pursuant to Section 25502.5, Silva is liable to Tvia for damages three times that amount which is: $1,782,186.00 (FAC, ¶94).

On August 30, 2006, and August 31, 2006, McKee sold 55,416 shares of Tvia's stock for an aggregate sales price of $174,254.15. The market value of the stock after disclosure and absorption of the information amounts to $0.04 per share or $2,216.64. The difference between (1) the sales

1  price, and (2) the market value after disclosure and absorption of the information, equals
2  $172,037.51.  Pursuant to Section 25502.5, McKee is liable to Tvia for three times that amount
3  which is: $516,112.53 (FAC, ¶95).

4  On August 30, 2006, and August 31, 2006, Wang sold 15,000 shares of Tvia's stock for an
5  aggregate sales price of $47,000. The market value of the stock after disclosure and absorption of
6  the information is $0.04 per share or $600.00.  The difference between (1) the sales price, and (2)
7  the market value after disclosure and absorption of the information, equals $46,400.  Pursuant to
8  Section 25502.5, Wang is liable to Tvia for damages three times that amount which is: $139,200.00
9  (FAC, ¶96).

10  Tvia is entitled to bring an action under Section 25502.5 because at all relevant times herein
11  Tvia had assets in excess of $1,000,000 and had a class of equity security held by 500 or more
12  persons (FAC, ¶97).  All of the defendants, and each of them, are jointly and severally liable for the
13  damages attributed individually to Silva, McKee and Wang, in this cause of action, as each of the
14  defendants participated in, aided, abetted and engaged in a conspiracy in furtherance of, the
15  unlawful insider trading as alleged above, the last overt act being the sale of Tvia's securities (FAC,
16  ¶98).

17  Again, this cause of action which is very specific follows twenty six pages of factual
18  averments in 86 paragraphs that are incorporated as though fully set for in the cause of action.
19  Given these considerations and factual assertions, the First Cause of Action states a claim upon
20  which relief can be granted.

**D. Tvia has properly pleaded causes of action for Breach of Fiduciary Duty of Loyalty and Breach of Fiduciary Duty of Care against the Defendants under California law.**

23  The elements of a cause of action for breach of a duty of loyalty are as follows: (1) the
24  existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and
25  (3) damage proximately caused by that breach. *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101.
26  "A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the
27  parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a
28  relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
7

in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent…" (Internal citations omitted)*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29.  An employee, while employed, owes undivided loyalty to his employer. *Fowler v.Varian Associates, Inc*. (1987) 196 Cal.App.3d 34, 41.  The duty of loyalty is breached, and the breach "may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer." *Stokes v. Dole Nut Co*. (1995) 41 Cal.App.4th 285, 295.

In addition to the twenty six pages of factual allegations, which are incorporated by reference, the two causes of action state.

> By reason of their positions as officers, employees and agents of Tvia, the defendants, and each them, owed Tvia a fiduciary duty of loyalty which precluded them from placing their own interests, or the interests of others, above the interests of Tvia in the course of and in the execution of their duties.
>
> By reason of their actions and omissions as alleged above, the defendants and each of them have violated their fiduciary duty of loyalty in that they took actions to benefit themselves and each other at the expense of Tvia, resulting in (1) the improper and mistaken payment of commissions and bonuses to the Sales Team in the amount of approximately $1 million and (2) the investigation costs of approximately $1.5 million which were incurred by Tvia.
>
> As a direct, legal and proximate result their breach of the fiduciary duty of loyalty, Tvia has suffered damages in the amount of approximately $2.5 million.
>
> All of the defendants, and each of them, are jointly and severally liable for the damages attributed individually to any single defendant in this cause of action, as each of the defendants participated in, aided, abetted and engaged in a conspiracy in furtherance of, the breach of the fiduciary duty of loyalty as alleged above, the last overt act being the illegal, unjust and mistaken payment of commissions and bonuses to the Sales Team.
>
> Plaintiff is informed and believes, and thereon alleges, that the conduct of defendants as described above was malicious, fraudulent and oppressive, undertaken in conscious disregard of plaintiffs rights, thereby entitling plaintiff to an award of punitive or exemplary damages to be determined at trial. (FAC, ¶¶ 101-105 &107-111).

Again, these causes of action which are very specific follow twenty six pages of factual averments in 86 paragraphs that are incorporated as though fully set for in the cause of action. Given these considerations and factual assertions, the Second Cause of Action and Third Cause of Action state claims upon which relief can be granted.

### E. Tvia has properly pleaded a cause of action for Fraud against the Defendants under California law.

Fraud may be actual or constructive. Cal. Civ. Code §1571. The elements of actual fraud are (1) A false representation or concealment of a material fact, (2) made with knowledge of its falsity or without sufficient knowledge to warrant a representation, (3) with the intent to induce the person to whom it is made to act upon it; and this person must (4) act in reliance upon the representation (5) to his or her damage. 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 286, p. 315. Constructive fraud allows relief for negligent omissions that constitute a breach of fiduciary duty. *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548. Constructive fraud consists of any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him. Cal. Civ. Code §1573. "Unlike fraud and undue influence, a constructive fraud claim allows relief for negligent omissions constituting breach of duty in a confidential relationship." *Tyler, supra*, 29 Cal.App.4th at p. 548. Constructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice. Cal. Civ. Code §1573; *Estate of Gump* (1991) 1 Cal.App.4th 582, 601. The difference between actual fraud and constructive fraud is primarily in the type of conduct which may be treated as fraudulent, such as a failure to disclose material facts within the knowledge of the fiduciary. Further, the reliance element is relaxed in constructive fraud. "[W]hether a fiduciary duty has been breached, and whether a statement constitutes constructive . . . fraud, depends on the facts and circumstances of each case." *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415.

Here, the actions of the Defendants constitute actual and constructive fraud. In addition to the twenty six pages of factual allegations enumerated in the FAC and discussed above, the actual cause of action alleges.

> 113. By reason of their actions and omissions as alleged above, the defendants and each of them have committed fraud against Tvia, in that they intentionally misrepresented and concealed material facts as alleged above, resulting in the improper and mistaken payment of commissions and bonuses to the Sales Team in the amount of approximately $1 million and (2) the investigation

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

9

       costs of approximately $1.5 million which were incurred by Tvia.

114. Tvia reasonably relied on the false representations of the defendants, and did not unreasonably ignore any facts, because the defendants were the employees and agents of Tvia with whom Tvia had a relationship of trust and confidence.

115. As a direct, legal and proximate result of the fraud by defendants, Tvia has suffered damages in the amount of approximately $2.5 million.

116. All of the defendants, and each of them, are jointly and severally liable for the damages attributed individually to any single defendant in this cause of action, as each of the defendants participated in, aided, abetted and engaged in a conspiracy in furtherance of, the fraud as alleged above, the last overt act being the illegal, unjust and mistaken payment of commissions and bonuses to the Sales Team.

117. Plaintiff is informed and believes, and thereon alleges, that the conduct of defendants as described above was malicious, fraudulent and oppressive, undertaken in conscious disregard of plaintiffs rights, thereby entitling plaintiff to an award of punitive or exemplary damages to be determined at trial.

Again, this cause of action which is very specific follows twenty six pages of factual averments in 86 paragraphs that are incorporated as though fully set for in the cause of action. Given these considerations and factual assertions, the Fourth Cause of Action states a claim upon which relief can be granted.

**F. Tvia has properly pleaded a cause of action for Unjust Enrichment against the Defendants under California law.**

A cause of action for unjust enrichment is based on the principle of restitution. *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1314. A person is required to make restitution if the failure to do so would result in unjust enrichment. *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662-1663. Ordinarily, restitution is required only if the benefits were conferred by mistake, fraud, coercion, or request. *Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn*. (1988) 205 Cal.App.3d 1415, 1422.

In addition to the twenty six pages of factual allegations, the actual cause of action alleges:

119. By reason of the foregoing, defendants Silva, Wang, McKee and Buttrick were unjustly enriched in the approximate amount of $1 million as the result of mistaken commission and bonus payments made by Tvia to these defendants.

120. As a direct, legal and proximate result oftheir unjust enrichment, justice requires that these defendants pay restitution to Tvia in the approximate

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS
10

amount of $1 million.

Again, this cause of action which is very specific follows twenty six pages of factual averments in 86 paragraphs that are incorporated as though fully set for in the cause of action. Moreover, the facts of the instant case are nearly identical to *J. C. Peacock, Inc. v. Hasko*, (1961) 16 Cal.Rptr. 518.

> The present appeal is from the judgment in the 'bonus' case. Directed against defendants in their capacities as former employees of plaintiff corporation, the action sought full recovery of excessive bonuses paid to defendants for stated periods in the year 1952 as the result of an asserted conspiracy by defendants to cheat and defraud. In furtherance of such conspiracy the following fraudulent and wrongful acts were alleged to have been performed: Plaintiff's inventory, as of December 31, 1952, was inflated by overvaluating materials on hand and work in progress--non-existent and worthless items were included in plaintiff's inventory, thus increasing its net profits; in December of 1952 unfinished parts and materials worth about $65,000 were caused to be shipped or delivered in order to increase the apparent gross receipts and net profits of the business--shortly after January 1, 1953, these parts and materials were returned to plaintiff; sums approximating $60,000, representing shipments not actually made until January of 1953, were included in plaintiff's gross sales for the year 1952; in January of 1953 defendants represented to plaintiff that a profit and loss statement of J. C. Peacock Machine Co. for the calendar year 1952, prepared under the direction of defendant Allroggen and showing a net profit of $220,000, was true and correct, whereas the true net profit of plaintiff corporation (after adjusting for errors resulting from activities of the defendants) was $63,784. As a result of the foregoing events and representations, there were paid to defendants as bonuses for the year 1952 sums totaling $27,496.77; these sums were in addition to regular salaries, the recovery of which was not sought, for that year. Three additional causes of action, each on a common count for money had and received, were also pleaded. Judgment was rendered as prayed for; it was also determined that certain defendants take nothing by their cross-complaint for salaries unpaid and for an accounting of the net profits for 1952 and 1953. 196 Cal.App.2d 354-355.

Given these considerations and factual assertions, the Fifth Cause of Action states a claim upon which relief can be granted.

**G. The Court Should not consider the Declaration of Matthew Rafat, Esq.**

Courts generally do not look outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *United States v. LSL Biotechs.*, 379 F.3d 672, 699 (9th Cir.2004). Here, Counsel for the Defendants attached a percipient declaration to the Defendants' Points and Authorities.  The declaration, however, is not directly cited in the points and authorities and appears to be surplusage.  Consequently, the declaration should be excluded pursuant to Rule 12(d)(1).

**CONCLUSION**

For the foregoing reasons, this Motion should be denied

Dated: June 20, 2008

CAMPEAU GOODSELL SMITH
A Law Corporation


By: /Gregory J. Charles
GREGORY J. CHARLES
Attorneys for Plaintiff