MATTHEW RAFAT (SBN 221577)
PO Box 111351
Campbell, CA 95011-1351
408-871-2899

Attorney for Defendants Benjamin Silva,
Matthew McKee, and Tsu Hsien "Steve" Wang

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TVIA, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>BENJAMIN SILVA, an individual TSU HSIEN "STEVE WANG", an individual; MATTHEW MCKEE, an individual; DIANE BJORKSTROM, an individual; MICHAEL BUTTRICK, an individual; YK SYNNET, a Japanese Corporation; AND DOES 1 to 50, inclusive,<br><br>    Defendants. | CASE NO: C 08 01908 SC<br><br>DEFENDANTS' SILVA, MCKEE, AND WANG's OPPOSITION TO PLAINTIFF TVIA'S MOTION FOR SANCTIONS |

<u>Issues</u>

1.    If the Court does not find that securities pre-emption exists, then does equitable estoppel allow Plaintiff to demand reimbursement for any fees or costs when Defendants or their counsel agreed to voluntarily remand and never received a stipulation from Plaintiff's counsel?

2.    Can the Court award attorneys' fees and costs under Rule 11 when Plaintiff failed to comply with its mandatory safe harbor provisions?

3.    Has Plaintiff demonstrated any evidence that Defendants or their counsel acted in subjective bad faith under 28 USC Section 1927's standard, which states, "reckless nonfrivolous filings, without more, may <u>not</u> be sanctioned"? (emphasis added) (See Plaintiff's Motion for Sanctions, page, 5, footnote 6)

1

Opposition to Plaintiff's Motion for Sanctions      TVIA, Inc. v. Silva., et al.

Introduction

In Plaintiff's "Motion for Sanctions," Plaintiff claims Defendants and their counsel acted in subjectively bad faith. Defendants addressed Issues 1, 2, 4, 5, 6, 7, and 9 in their separate "Opposition to Plaintiff TVIA's Motion to Remand" and incorporate that Opposition by reference here. Defendants showed in their separate Opposition their legal arguments are supported by the U.S. Supreme Court cases, as well as the plain language of several statutes. Therefore, only Issues 3 and 8 remain.

Legal Analysis

A.    **PLAINTIFF'S REQUEST FOR SANCTIONS UNDER RULE 11 IS IMPROPER**

Plaintiff asks for sanctions under Rule 11. See Plaintiff's Motion, 5:11 ("28 U.S.C. §1446(a) expressly incorporates the Rule 11 standard.") See also Plaintiff's caption, "NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. §§ 1927 AND 1446(a), **FRCP 11**, AND, LR7-8." (Emphasis added.)

Under Rule 11, a motion for sanctions "shall not" be filed with or presented to the court if the opposing party corrects the alleged violation within the 21 day "safe harbor" provided under the Rule:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b) . It shall be served as provided in Rule 5, but **shall not be filed with or presented to the court** unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . [Emphasis added.]

Plaintiff never mailed or emailed its Motion for Sanctions to Defendants or their counsel; therefore, Plaintiff, in attempting to receive sanctions under Rule 11, violated the very rule it seeks to use. See Declaration of Matthew Rafat, paragraph 10.

In this Circuit, "[t]he procedural requirements of Rule 11(c)(1)(A)'s safe harbor are mandatory." *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 789 (9th Cir. 2001). "[A] motion

for sanctions must not be filed if the alleged violation is corrected by the opposing party within the twenty-one day `safe-harbor' period." *Giganti v. Gen-X Strategies, Inc.,* 222 F.R.D. 299, 305-06 (E.D. Va. 2004) . *See also Aerotech, Inc . v. Estes,* 110 F.3d 1523, 1528 (10'x' Cir . 1997) ; *Elliott v. Tilton,* 64 F.3d 213, 216 (5`" Cir . 1995).  Having failed to comply with Rule 11, Plaintiff is not entitled to sanctions.  In addition, its improper filing for sanctions demonstrates that it is Plaintiff, not Defendants, who are making unnecessary, unsupported filings.

B.  **EQUITABLE ESTOPPEL PREVENTS PLAINTIFF FROM SEEKING SANCTIONS**

Once Defendants accepted Plaintiff's counsel's offer to remand "or" be faced with a fee request, equitable estoppel prevents Plaintiff from changing its position.  As the United States Supreme Court noted, one "who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted."  *Dickerson v. Colgrove*, 100 U.S. 578, 25 L. Ed. 618 (1879).  See also: *Olson Distributing Systems, Inc. v. Glasurit America, Inc.*, 850 F.2d 295 (6th Cir. 1988).

Once Defendants' counsel Gregory Charles accepted Defendants' agreement to voluntarily remand the action (saying, "Thank You"), Plaintiff waived any fees associated with the federal action.  See Decl, Rafat, emails attached as Exhibit 1.   Mr. Charles made an "either/or" offer—either Defendants agree to a remand, which they did, "or" they would be liable for attorneys' fees.  Mr. Charles broke his own word solely to generate attorneys' fees and harass Defendants.

If Plaintiff alleges that Defendants were demanding that Plaintiff waive *all* possible fees in a case that had just started, its position is unreasonable and unsupported by law or fact.  Such a position is not legally possible, because a federal judge cannot order parties to waive fees in an underlying state action once s/he remands the case.  A federal judge, after remand, lacks jurisdiction to make any substantive orders affecting the state court proceedings.

3

If Plaintiff alleges that it had to file a response to the outstanding 12(b)(6) motion, its argument does not comport with equitable estoppel, nor the intent Defendants' counsel expressed on May 5, 2008, to file the motion to dismiss in state court. Indeed, there would be no reason for Defendants' counsel to ask for a hearing date for a demurrer unless he intended to remove the 12(b)(6) motion to the state format of a demurrer per CCP 430.90(a).

Thus, it is only because of Plaintiff's misunderstanding of CCP 430.90(a), and its unreasonable refusal to provide a hearing date for a demurrer (the state version of a 12(b)(6)) that Defendants and this Court are here. It is telling that at no point in time did Plaintiff ever provide a hearing date. Under Santa Clara County Superior Court local rules, a hearing date must be cleared before filing a motion.

C. **Issue Number 8: Plaintiff Acted Unreasonably and Sought to Improperly Avoid a Demurrer**

   1. *Defendants' Counsel Agreed to a Stipulation after One Email Requesting a Voluntary Remand*

Plaintiff claims that Defendants and their Counsel demanded that Plaintiff waive any right to seek costs and attorney's fees as a condition to a stipulation for an order of remand. Plaintiff is misleading the Court. The emails attached to Matthew Rafat's separate Declaration for this Opposition show Defendants' counsel did everything possible to get this case back to state court without the need for further motions or court intervention.

On May 1, 2008, Gregory Charles, Plaintiff's outside counsel, sent an email at 5:47PM stating that if he did not hear back from me by May 5, 2008, he would file a motion for remand. His exact words were, "Unless you stipulate to a remand, we will be forced to file a motion, which will subject you to costs and attorneys' fees…In that event [if Defendants refused to a stipulation], we will include in our request for fees the time associated with the aforementioned motion." This email indicated a simple offer: agree to a stipulation, or be subject to fees and costs. Plaintiff's counsel offered an "Either/Or" proposition.

4

On May 1, 2008, at 8:04PM—less than three hours later—Defendants' counsel replied, stating, "I have spoken to my clients. We are amenable to voluntarily remanding this action to state court…Defendants will voluntarily remand this action back to state court, and of course, since no filings have occurred, TVIA is not entitled to any attorneys' fees or costs."

On May 2, 2008, Defendant's counsel wrote an email to Mr. Charles, stating, "I am happy to sign anything you want; however, I have already requested that the judge remand the case voluntarily." [emphasis added] The intent of this email was to demonstrate good faith and a willingness to voluntarily remand to state court on the terms Mr. Charles had offered on May 1, 2008 (i.e., stipulate to a voluntary remand, "or" be faced with paying attorneys' fees).

On May 2, 2008, at 1:32PM, Mr. Charles wrote back, saying, "Thank You."

Nothing happened between May 2, 2008 and May 5, 2008, except for one event. On May 5, 2008, at 12:12PM, Plaintiff's counsel asked, Mr. Stamp, Plaintiff's in-house counsel, for a date for the demurrer once the Court remanded the Complaint to state court. This request for a date apparently upset Mr. Stamp, causing a complete reversal of Plaintiff's willingness to cooperate.

On May 5, 2008, Plaintiff's in-house counsel sent an email showing he did not want to be faced with a demurrer in state court:

> It is inappropriate to schedule a motion in the state court action while the case is still pending in federal court. Also, your refusal to copy Mr. Charles on your request to clear dates also constitutes a violation of the court's rules.

Mr. Stamp's refusal to provide a date for the demurrer in state court violated the California Code of Civil Procedure Section 430.90(a), which allows the scheduling of a demurrer as a matter of right. See CCP 430.90(a):

> Where the defendant has removed a civil action to federal court without filing a response in the original court and the case is later remanded for improper removal, the time to respond shall be as follows:

> If the defendant has not generally appeared in either the original or federal court, then 30 days from the day the original court receives the case on remand to move to dismiss the action…if the court has not ruled on a similar motion filed by the defendant prior to the removal of the action to federal court.

Since nothing substantive happened between the agreement to remand back to state court and the request for a date for Defendants' demurrer, the only rational explanation for the adversarial stance after May 5, 2008, is that Plaintiff's in-house counsel did not want to be subject to a demurrer and decided to violate local state court rules.

After this email exchange between Jeff Stamp and Defendants' counsel, Mr. Charles' willingness to move forward on the agreement to voluntarily remand changed. See email dated May 6, 2008, less than twenty-four hours after the email requesting a date for Plaintiff's demurrer: "We are tired of your constant posturing…My client has now incurred over a $1,000.00 in fees dealing with your patently improper removal of the case."

Nothing substantive except a request for a demurrer date occurred between the "Thank You" and the latter email, suddenly demanding $1,000 in fees. (All emails mentioned above are attached to Matthew Rafat's Declaration, submitted along with this separate Opposition.)

Defendants agree with Mr. Charles' rationale for sanctions as stated in Plaintiff's Motion for Sanctions. Plaintiff cites 28 U.S.C. §§ 1927. Section 1927 authorizes sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Emails show Mr. Gregory Charles, acting on the direction of Mr. Jefferson Stamp, refused to adhere to his own offer to stipulate to a remand and then suddenly demanded 1,000 dollars from Defendants. As a result of failing to cooperate with Defendants' counsel, Mr. Charles and Mr. Stamp fall within the definition of sanctionable conduct they themselves give the Court. Defendants' conduct smacks of bad faith, violates the very Rule they have invoked, and should not be condoned. Therefore, Defendants request sanctions against them and their client, as stated in Mr. Rafat's Declaration, paragraph 11.

### 2. *Plaintiff's Decision to Take an Unreasonable Stance Should not Raise Costs for Defendants*

Defendants are individuals. They are not a corporation that has a litigation budget set aside, and no insurance policy is covering their attorneys' fees in this case. As a result, Defendants' counsel had and has a strong incentive to cooperate with Plaintiff's counsel to minimize attorneys' fees. It is Plaintiff's prerogative if it wants to file unnecessary motions. It apparently has the funds to do so. But to transfer their unwise choice to Defendants does not comport with notions of fair play.

### 3. *Plaintiff's Sudden Demand for Attorneys' Fees is Suspicious*

Plaintiff will argue in its reply that Defendant's counsel wanted Plaintiff to waive their attorneys' fees. But at the time Defendants' counsel agreed to sign a stipulate, the offer to remand was based on no attorneys' fees being transferred to defendants. Mr. Charles email dated May 1, 2008 demanded that Defendants agree to a remand "or" be faced with "fees for the time associated with the aforementioned [remand] motion." Once defendants and their counsel agreed, even stating, "I am happy to sign anything you want," they relied on Plaintiff's representation and were not liable for any of their fees. In addition, Plaintiff had not expended 1,000 dollars on May 1, 2008 when it sent its email offering a stipulation, or even by May 5, 2008, when a total of six one page emails had been sent back and forth between counsels. The mere fact that by May 6, 2008, Plaintiff was suddenly demanding 1000 dollars and is now demanding over 8,000 dollars should indicate that these motions before the Court were filed to manufacture attorneys' fees. Defendants cannot tell Plaintiff how to spend its money—but Defendants should not be liable for fees not wisely spent. Plaintiff's counsel never spent the five minutes it would have required to draft a stipulation to remand this case back to state court. See <u>Declaration of Matthew Rafat</u>, paragraph 12. Had either of Plaintiff's counsels drafted a stipulation including the terms of their offer to voluntarily remand to state court on May 1, 2008, none of these motions before the Court would have been necessary.

7

D. **Issue Number 9: Plaintiff Accuses Defendants' Counsel of Taking Frivolous Positions**

Plaintiff raises the following issue: "Mr. Rafat has acted in subjective bad faith and taken frivolous positions." While defendants believe that their Opposition to the Motion to Remand sufficiently refutes this accusation, and sanctions are improperly requested under Rule 11, Plaintiff is also asking for sanctions under 28 USC Section 1927, where sanctions "must be supported by a finding of subjective bad faith….[R]eckless nonfrivolous filings, without more, may not be sanctioned." There is no evidence that supports any finding of subjective bad faith on the part of defendants or their counsel.

In addition, Defendants are skeptical that Plaintiff had to incur 8,000 dollars in fees to remand this case after an agreement to remand in principle was reached within the same day as Defendants' May 1, 2008 request for a voluntarily remand.

This Court should not view Defendants' counsel's willingness to remand voluntarily as an indication of the underlying legal support for the removal. The only indication this Court should take from the immediate willingness to voluntarily remand was an effort to minimize Defendants' attorneys' fees and costs through cooperation. Thus, a finding of subjective bad faith would run contrary not only to the facts, but to the Rule 11 standard, which allows for vigorous representation.

Indeed, if anyone has demonstrated subjective bad faith, it is Plaintiff. This case before this Court is the third case Plaintiff has filed against these Defendants in the last three years. Plaintiff has filed two other cases against Defendants in Santa Clara County Superior Court. One case was dismissed, and Plaintiff continues to refuse to reimburse Defendants for their filing fees, despite the filing of a memorandum of costs.

The other state court case involved 14 motions and 219 filings and is set for trial on September 15, 2008. See <u>Decl, Rafat</u>, paragraph 4. It is notable that Plaintiff did not file this new case until it became apparent that Defendants were willing to go to trial. Much of the filings in the state court case involved discovery matters that would have never occurred had the case been in

8

Opposition to Plaintiff's Motion for Sanctions                                                                                TVIA, Inc. v. Silva., et al.

federal court's less adversarial (and some might say, more civilized) discovery system. Thus, Defendants had reasonable grounds under an objective as well as subjective reading of the law in filing their notice of removal to federal court.

Plaintiff cites *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) in asking for sanctions. First, the *Martin* Court's holding supports Defendants' position:

> We hold that, **absent unusual circumstances**, attorney's fees should **not** be awarded when the removing party has an objectively reasonable basis for removal… when an objectively reasonable basis exists, fees should be denied. See, *e.g., Hornbuckle*, 385 F.3d, at 541; *Valdes* v. *Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (CA5 2000)" (emphasis added)

Thus, the Supreme Court rejected the argument that attorneys' fees had to be awarded automatically upon remand. Defendants have cited Supreme Court cases, such as *United States v. O'Hagan*, 521 U.S. 642, 650 (1997), supporting its arguments in their Opposition to Plaintiff's Motion to Remand. They had an objectively reasonable basis for removal. Second, this case is distinguishable because it involves a class action.

E. **Issue Number 3: Plaintiff Misrepresents the Import of a State Discovery Ruling**

Plaintiff alleges that "Mr. Rafat deliberately misrepresented Wang's residency in the Notice of Removal ("NOR")." In plain language, Plaintiff is accusing Defendants' counsel of lying to the Court, a serious allegation.

Plaintiff cites a state discovery ruling that required Defendant Wang to travel from China to California for his deposition. First, the basis for Mr. Wang's residency was supported by his own earlier declaration, which was attached as "Exhibit B" to the Notice of Removal. This declaration stated that Mr. Wang lived in China. See Exhibit 2 attached to Decl of Rafat, "I am currently in China." Second, the state court found residency in the state of California for purposes of a deposition appearance. Prior to signing with The Law Office of Matthew Rafat, Mr. Wang had been *pro se*. While *pro se*, he listed a Santa Clara County, California address to receive papers as a courtesy to Plaintiff. The state court interpreted that courtesy as evidence

9

Opposition to Plaintiff's Motion for Sanctions                                                   TVIA, Inc. v. Silva., et al.

that Mr. Wang had sufficient contacts with California to order him to travel from China to California for his deposition.

Under FRCP 28(b), the result may have been different had a federal judge considered the difficult issue of ordering a Chinese resident who spends most of his time in China to travel to California for his deposition. A discovery ruling by a state court judge is not dispositive, and is certainly not evidence of any deliberate misrepresentation to the Court.

### **Conclusion**

Plaintiff presented to the Court, in violation of Rule 11, a Rule 11 motion for the improper purposes of obtaining an unfair advantage over Plaintiffs, biasing the Court against Plaintiffs, and needlessly increasing the cost of litigation.

Defendants will let Justice Stevens have the last word, from a dissent in *Cooter & Gell v. Hartmarx*, 496 U.S. 384 (1990):

> Despite the changes that have taken place at the bar since I left the active practice 20 years ago, I still believe that most lawyers are wise enough to know that their most precious asset is their professional reputation. Filing unmeritorious pleadings inevitably tarnishes that asset. Those who do not understand this simple truth can be dealt with in appropriate disciplinary proceedings, state law actions for malicious prosecution or abuse of process, or, in extreme cases, contempt proceedings. It is an unnecessary waste of judicial resources and an unwarranted perversion of the Federal Rules to hold such lawyers liable for Rule 11 sanctions in actions in federal court.

Defendants hope they have shown the court that they and their counsel care about their profession reputation and tried to do everything possible, within reason, to avoid burdening this Court with unnecessary motions.

Dated: June 19, 2008                                  /sd/ Matthew Rafat
                                                      Matthew Rafat, Esq.

I declare that:

I am and was at the time of service of the papers herein a resident of the State of California and over the age of eighteen years and am not a party to this action; my business address is PO Box 111351, Campbell, California 95011.  On **June 20, 2008**, I caused to be served the following document(s):

1. DEFENDANTS' SILVA, MCKEE, AND WANG's LIMITED OPPOSITION TO REMAND OF CASE OR ORDER LENGTHENING TIME AND REQUEST FOR REMAND

[X] **BY EMAIL**

Stephanie O. Sparks
60 South Market Street, Suite 1400
San Jose, CA  95113-2396
SOS@hogefenton.com

Brad Jones, Esq.
Needham, Davis, Kepner & Young, LLP
1960 THE ALAMEDA STE 210
SAN JOSE CA  95126-1451
bjones@ndkylaw.com

[X]    **BY E-FILING**

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on **June 20, 2008** at San Jose, California.

/sd/ Matthew Rafat
Matthew Rafat

Opposition to Plaintiff's Motion for Sanctions          TVIA, Inc. v. Silva., et al.