MATTHEW RAFAT (SBN 221577)
PO Box 111351
Campbell, CA 95011-1351
408-871-2899

Attorney for Defendants Benjamin Silva,
Matthew McKee, and Tsu Hsien "Steve" Wang

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TVIA, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>BENJAMIN SILVA, an individual TSU<br>HSIEN "STEVE WANG", an individual;<br>MATTHEW MCKEE, an individual;<br>DIANE BJORKSTROM, an individual;<br>MICHAEL BUTTRICK, an individual;<br>YK SYNNET, a Japanese Corporation;<br>AND DOES 1 to 50, inclusive,<br><br>        Defendants. | CASE NO: C 08 01908 SC<br><br>DEFENDANTS' SILVA, MCKEE, AND<br>WANG's REPLY BRIEF TO PLAINTIFF'S<br>OPPOSITION TO 12(b)(6) MOTION<br><br>Date:  July 11, 2008<br>[moved from June 6 per Court order]<br>Time: 10:00AM<br>Court: 1, 17th Floor<br>Hon. Judge Conti<br><br>Date Set for Trial: N/A |

Issues

If this Court decides to accept jurisdiction, then it can decide the following issues:

**1)** Should this Court expand tort liability by deeming all sales managers fiduciaries, even though no showing or allegation has been made that Defendants handled company funds?

**2)** Should Defendants have any liability as fiduciaries based on how Plaintiff's accountants and lawyers decided to record revenue?

**3)** Can Plaintiff shift the business risk of product returns to Defendants, who were sales managers, by alleging fraud and violations of fiduciary duties, or will allowing Plaintiff's lawsuit to proceed lead to expanded tort liability for all sales employees?

**4)** Has Plaintiff properly alleged "insider trading" or a non-class-action claim when its Complaint fails to allege any direct losses or stock trades made by the Company?

A.    THIS COURT HAS SUBJECT MATTER JURISDICTION IN THIS CASE

As set forth in Defendants' Opposition to Plaintiff's Motion to Remand, this Court may exercise jurisdiction because federal securities law expressly provides for exclusive jurisdiction.  See Defendant's separately filed Opposition, Section 27 of the Act, now codified at 15 U.S.C. § 78aa:

> The district courts of the United States . . . shall have
> **exclusive jurisdiction** of violations of this chapter or the
> rules and regulations thereunder, and of all suits in equity
> and actions at law brought to enforce any liability or duty created
> by this chapter or the rules and regulations thereunder. [emphasis added]

Plaintiff's lawsuit is pre-empted by the 1934 Exchange Act, more specifically, Section 10(b) (see 15 U.S.C. §§ 78(j), 78i(e) and 78r(b)) because it accuses defendants of securities fraud (insider trading) in public markets under the SEC's jurisdiction.  Plaintiff has in fact asked the SEC to be involved in this case, and the SEC is currently involved in this matter.

B.    PLAINTIFF HAS NOT ESTABLISHED THAT IT HAS MET THE STANDARD FOR PLEADING FRAUD UNDER RULE 9, MUCH LESS UNDER THE PSLRA

Plaintiff's arguments focus on whether generalized claims for fraud exist.  Plaintiff cites California Civil Code sections that confirm fraud has been codified as a code section.  But Plaintiff's argument evades the core issue in Defendants' 12(b)(6) Motion, namely, that its Complaint does not specifically or properly plead fraud under FRCP 9(b) and state law.  More specifically, Plaintiff alleges fraud without the following essential facts: 1) when the misrepresentations or material omissions occurred; 2) what was said or written (or concealed); 3) to whom misrepresentations or material omissions were directed; 4) the authority of the employees to speak on behalf of the company.  These specific facts are required under the higher pleading standard for fraud under FRCP 9 as well as California law.  See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645; and *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1992) 2 Cal.App.4th 153, 157.  Plaintiff's own Opposition confirms that its allegations lack the specificity required by Rule 9.  For example, in Plaintiff's Opposition, 6:1-2, Plaintiff states that defendants had access to "material inside information about Tvia relating to

2

Defendants' Reply Brief 12(b)(6) Motion                                    TVIA, Inc. v. Silva., et al.

1  the undisclosed side agreements, misapplication of funds, altered purchase orders, and other

2  wrongdoing by the Sales Team."  No further details are provided.

3        See also Plaintiff's <u>Opposition</u>, 6: 5-10, where Plaintiff bases its fraud claims on the

4  conclusory allegation that defendants sold stock on "inside information."  Plaintiff does not specify

5  the meaning of "inside information"; why the inside information would have materially affected its

6  stock price; what particular side agreements were hidden from the company; how much those

7  agreements involved; what dealers were involved in these hidden side agreements; and other facts

8  that would meet the higher pleading standard required under Rule 9 and California law.

9        Most important, Plaintiff's Complaint does not allege any facts that would differentiate

10  Plaintiff's claims from an ordinary business situation where customers return company products and

11  ask for a refund.  Plaintiff fails to connect product returns with a "conspiracy" because of how vague

12  its Complaint is.  Plaintiff's counsel has attempted before to usher in vague allegations of a

13  conspiracy, only to be contradicted by the very persons it claims were involved in the conspiracy.

14

15  C.    <u>PLAINTIFF HAS NOT PROPERLY PLED A CAUSE OF ACTION FOR INSIDER
      TRADING UNDER CALIFORNIA LAW</u>

16

17        Not only is Plaintiff's Complaint vague, but Plaintiff does not cite facts that establish any

18  damages or nexus with illegal inside trading.   First, as stated earlier, Plaintiff has not alleged which

19  agreements were fraudulent; how much money customers returned; when these companies demanded

20  a return of monies paid; or any other facts that would establish conduct *materially* affecting a public

21  company's stock price.

22        Plaintiff also admits that its Complaint seeks damages based on losses sustained by *all* public

23  shareholders.  Plaintiff's Complaint fails to specify any direct losses as a result of Defendants'

24  alleged trading.  Plaintiff does not cite figures stating when it bought shares; how much it bought

25  shares; when it sold shares; and at what price it sold its own shares.  Thus, Plaintiff's Complaint

26  purports to claim damages deriving from trades made by general public shareholders, not Plaintiff.

27

28

Plaintiff seeks damages for all losses sustained by *other* shareholders in its insider trading claim, and Plaintiff never specifies how much it has lost as a result of trading its own shares.

Plaintiff's Opposition supports Defendants' argument that Plaintiff is seeking to introduce a class action complaint by way of artful pleading.  See <u>Plaintiff's Opposition</u>, 6: 21-23, citing Plaintiff's Complaint: "The market value of the stock after disclosure and absorption of the information amounts to $0.04 per share or $8,000. The difference between (1) the sales price, and (2) the market value after disclosure and absorption of the information, equals $594,062."  Plaintiff consistently refers to sales of its shares by persons other than Plaintiff.  No direct loss is ever alleged.

Another paragraph confirms Plaintiff's class action calculation of damages: see <u>Opposition</u>, 6: 16-19, citing Complaint: "By the time all of the wrongdoing by the Sales Team had been disclosed by Tvia, and a reasonable time had elapsed for the market to absorb the information, Tvia's stock was trading at approximately $0.04 per share."  Plaintiff's allegation shows that it seeks to recoup all public market losses in its share price.

Plaintiff has arbitrarily picked a date, used the price at which its stock was trading on that date as "fair value," and then decided that when the market deemed its stock to be worth $0.04 per share on some date, it can recoup all share price losses through defendants.  [Plaintiff's stock is currently trading at less than $0.03 per share, over a year after defendants stopped working there, indicating defendants are uninvolved in the company's stock price decline, and other issues have caused Plaintiff's demise as a company].  There is no case law, in the absence of a class action lawsuit against officers or accountants of a company, allowing Plaintiff's broadly drafted claims.

D.    <u>PLAINTIFF'S COMPLAINT DOES NOT ALLEGE DIRECT DAMAGES TO ITSELF</u>

Without belaboring the point, Plaintiff's Opposition cites only Defendants' sale of shares, and never alleges that Plaintiff bought these shares or sold shares that were affected by the price decline:

See <u>Opposition</u>, 6: 26-28: McKee sold 55,416 shares of Tvia's stock for an aggregate sales price of $174,254.15. The market value of the stock after disclosure and absorption of the information

1    amounts to $0.04 per share or $2,216.64.  [There is no allegation that Plaintiff lost anything, just that

2    the market "absorbed" some losses.]

3        See Opposition, 7: 5-7: The market value of the stock after disclosure and absorption of the

4    information is $0.04 per share or $600.00. The difference between (1) the sales price, and (2) the

5    market value after disclosure and absorption of the information, equals $46,400.  [There is no

6    allegation that Plaintiff lost anything, just that the market "absorbed" some losses.]

7        See Opposition, 3: 15-16: "In August 2006, Silva, Wang and McKee, made approximately

8    $437,000 in gains from these unlawful stock transactions." [Alleged loss does not relate to Plaintiff.]

9        Plaintiff's Complaint is based on Defendants' sale of their own shares.  Again, there is no

10   private cause of action that makes an employee's sale of company shares illegal under federal or state

11   laws without more specific facts.

12

13   E.    PLAINTIFF'S INSIDER TRADING CLAIMS CAN ONLY BE PLED IN A CLASS
           ACTION LAWSUIT

14        Even if Plaintiff could solve the problem of damages by somehow going back and

15   determining when it bought shares and sold them, its Complaint would be speculative.  For this

16   reason, Plaintiff should not be allowed to amend its Complaint unless it agrees to be subject to the

17   PSLRA.  Only a class action resolves the issue of speculative claims and damages.  The impossibility

18   in identifying who exactly is responsible for not buying shares at a particular price—thereby causing

19   a price decline—is why class actions exist for securities fraud.  Only class action lawsuits can make

20   allegations on behalf of all shareholders, thereby removing the necessity of linking who sold what

21   shares to whom.  But Plaintiff's Complaint is so speculative it does not even allege it sold shares to

22   anyone, or that it directly sustained any losses.  Thus, the Court can dismiss Plaintiff's Complaint

23   based on its failure to establish proximate causation or damages to itself.

24        It is also highly unlikely that a few shareholders could cause a stock price decline based on the

25   number of shares they sold.  Plaintiff's Complaint does not allege that any of the defendants were

26   major shareholders or above 10% shareholders.

27

28

F.    PLAINTIFF SEEKS TO USE PRODUCT RETURNS AS A BASIS FOR SUING SALES
       MANAGERS FOR FRAUD

        Plaintiff, perhaps realizing that it cannot sue its ex-employees for damages arising from sales

they made on the public stock market, mentions audit costs.  Audit costs are irrelevant to Defendants

Silva, McKee, and Wang because Plaintiff's Complaint lists them as involved in sales, not accounting

or finance.  See Plaintiff's Complaint, 1: 26-28: "The former **sales team** of TVIA, consisting of

Defendants Silva, Wang, McKee…"  [emphasis added]  See Id. at 4: 19-24, referring to all

Defendants as "sales managers" or involved in sales.

        Under Plaintiff's theory, any sales manager who sold a product that was later returned and had

to be deducted from net profit is liable for fraud.  Thus, Plaintiff asks this Court to accept a broad

theory of liability that is unprecedented and without legal support.  Plaintiff's own cited cases support

the view that liability for financial violations is limited to accountants, owners (CEOs), and partners,

not sales managers.  See *J. C. Peacock, Inc. v. Hasko*, 196 Cal.App.2d 353 (1961):

> [A]ccording to Hasko, this presented an opportunity to start
> a machine shop business of his own...defendants Hasko, Greer
> and Plummer joined one Hinman as **partners** in forming a machine
> shop business operating under the name of Pacific Aircraft Products;
> it was further found that said business was formed for the purpose
> of cheating and defrauding plaintiff in the subcontracting of work to
> such partnership."  Also, in the *Peacock* case, Defendant "Mr.
> Peacock, during all this time, had delegated administration of the
> company's management to Hasko, as business started to increase,
> he became more active and **took over the accounting department**
> in April of 1953. [emphasis added]

        Plaintiff's claims revolve around sales employees, not managers who took over the accounting

department.  There is no allegation that Defendants Silva, McKee, or Wang "took over the accounting

department," or had the requisite knowledge to do so.  The *Peacock* case supports Defendants'

argument that the liability, if any, falls on Plaintiff's accounting department, not them.  In addition,

the *Peacock* case, like all others Plaintiff cites, confirms fiduciary duties arise where either

accounting fraud is involved, or employees set up a competing business at the same time as they work

6

Defendants' Reply Brief 12(b)(6) Motion                                                     TVIA, Inc. v. Silva., et al.

for their company.  No allegations in the Complaint specify that Defendants opened a competing

business.

G.  <u>PLAINTIFF FAILS TO CITE A SINGLE CASE ON POINT SUPPORTING ITS BROAD EXPANSANSION OF FIDUCIARY VIOLATIONS TO SALES EMPLOYEES BASED ON PRODUCT RETURNS</u>

For purposes of Defendants' Motion to Dismiss, alleged accounting shenanigans do not

support Plaintiff's insider trading or fiduciary claims.  While the SEC may be interested in such

claims—and indeed, the SEC is now involved in this case at Plaintiff's request—Defendants cannot

sustain insider trading or fiduciary claims based on violations that fall under the duties of accountants

and other financial experts.  To allow these vague, specious claims to continue would subject *all*

employees in every company to potential fraud and liability for returned products.

When one sifts through Plaintiff's vague allegations, it is apparent that Plaintiff is asking its

employees to insure Plaintiff against returned products.  Plaintiff's theories of liabilities contravene

Labor Code 2800 and 2802, which require the burden of product returns and expenses incurred in the

scope of employment to be borne by the employer:

> 2800.  An employer **shall** in all cases indemnify his employee for losses caused by the employer's want of ordinary care.
> 2802.  (a) An employer **shall** indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…

Thus, even under the most liberal pleading standard—to which Plaintiff is <u>not</u> entitled under

FRCP 9—Plaintiff cannot use conclusory allegations of conspiracies and insider trading to allege

product returns, which led to accounting reinstatements, are the responsibility of its sales employees.

The buck stops with the company's accounting team and financial experts, who are responsible for

determining how and when to record and recognize revenue, not sales managers.  There is not a

single case supporting the expansion of tort liability Plaintiff requests.  Therefore, Defendants Silva,

McKee, and Wang cannot be held liable for fiduciary, fraud, or insider trading claims that arise from

how its former employer decided to record revenue.  Because Plaintiff's Complaint bases its

allegations only on trades made on the public market and on accounting issues, it fails to state a cause

of action against Defendants McKee, Silva, and Wang, and it lacks standing to sue them for any damages.

H.     PLAINTIFF'S CITED CASES ONLY PROVE IT IS OVERREACHING

In trying to cite some authority for suing ex-employees for stock market losses and accounting statements, Plaintiff cites cases that are distinguishable and irrelevant.  All of Plaintiff's cases involve broadly recognized and clearly established fiduciary duties, such as attorney-client, broker-client, or partner-partner relationships.  No cases exist recognizing the theory that a non-officer sales manager owes a fiduciary duty to his employer in the absence of setting up a competing business (which breaches the duty of loyalty).  For example, with respect to fiduciary and loyalty duties, Plaintiff cites *Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34.  But *Fowler* concerned an employee who, during his employment, became actively involved in establishing a competing business, and who refused to sign a confidentiality agreement.  The case found a fiduciary duty had been violated where an employee currently working for a company decided to compete directly with his employer and also receive a paycheck from that employer.  Those facts do not apply here and are not alleged in the Complaint.

In *Stokes v. Dole Nut Co.*, cited by Plaintiff, two employees at one of Dole's receiving/packaging/processing plants began preparations to start an almond processing plant. When Dole discovered their plans, the employees were terminated.  Again, Plaintiff does not allege in its Complaint that Defendants tried to set up a competing business.

*Wolf v. Superior Court (Walt Disney Pictures and Television)* (2003) 107 Cal.App.4th 25, another case Plaintiff cites, is completely inapposite: "At issue is whether one contracting party's right to contingent compensation in the form of a percentage of future revenues in the control of the other contracting party creates a fiduciary relationship in an otherwise arm's length business transaction."  Plaintiff does not allege in its Complaint there was an arm's length business transaction at issue.

Plaintiff's use of *Pierce v. Lyman*, (1991) 1 Cal.App.4th 1093, 1101, is even less applicable, because it dealt with attorneys involved in a probate matter ("The question presented in this appeal is whether respondent attorneys owed a duty to the beneficiaries of the trust."). Plaintiff's desperate attempts to find some case relevant to sales managers ends with another estate planning case, *Estate of Gump* (1991) 1 Cal.App.4th 582.

*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399 involves a real estate agent's fiduciary duty to his or her client, another clearly recognized fiduciary duty. *Assilzadeh* states only a fiduciary can be liable for constructive fraud, which is Defendants' position. As sales managers, Defendants were not fiduciaries. A non-fiduciary cannot conspire to breach a duty owed only by a fiduciary. *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1597-1598.

Most important, Plaintiff fails to establish sales managers have any duty to ensure proper accounting statements. No case holds sales managers owe a fiduciary duty relating to how a company's accounting department records revenue. No case exists finding a fiduciary duty relating to sales managers making stock market trades on the public market. Plaintiff is asking this Court to invent a novel tort claim that will make every managerial employee a surety for an employer's accounting methods. Worse yet, Plaintiff is trying to sue its ex-employees for product returns, meaning it is asking this Court to make all managerial employees guarantors of sales.

I.     PLAINTIFF'S UNJUST ENRICHMENT CLAIM LACKS ESSENTIAL ELEMENTS

Plaintiff's unjust enrichment claim is derived from its insider trading claim, i.e. that Defendants received a substantial amount of monies because of their allegedly improper stock sales. If this Court finds the insider trading claims are not properly pled, then the corresponding unjust enrichment claim is also not properly pled. But more important, Plaintiff fails to allege the necessary elements for an unjust enrichment claim, namely, "receipt of a benefit by the defendant from the plaintiff." See *Schroeder v. Buchholz*, 2001 ND 36, 622 N.W.2d 202, "Unjust enrichment is an equitable doctrine applied in the absence of a contract and used to prevent one person from being

unjustly enriched at another's expense. ... "The essential element in recovering under a theory of

unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be

inequitable to retain without paying for its value." *Zuger v. North Dakota Ins. Guar. Ass'n*, 494

N.W.2d 135, 138 (N.D. 1992).  As stated above, stock sales on the public market do not affect

Plaintiff and do not produce property belonging to Plaintiff.  In addition, Five elements must be

established to prove unjust enrichment:  1. An enrichment; 2. An impoverishment; 3. A connection

between the enrichment and the impoverishment; 4. Absence of a justification for the enrichment and

impoverishment; and 5. An absence of a remedy provided by law.  *Schroeder v. Buchholz*, 2001 ND

36, 622 N.W.2d 202.  Despite pleading an equitable cause of action, nowhere in its Complaint does

Plaintiff show there is "an absence of a remedy" provided by other laws.  Plaintiff also fails to

establish what exactly Defendants took directly from it, which is one element for unjust enrichment.

J.    MATTHEW RAFAT'S DECLARATION SHOULD BE CONSIDERED

Plaintiff filed an objection to Matthew Rafat's declaration.  This declaration provides relevant

information about the history of cases involving TVIA and defendants.  This declaration is relevant to

Plaintiff's claim it is acting in good faith and is entitled to sanctions, a claim belied by their three

separate lawsuits against the individual defendants.  In addition, Mr. Rafat has personal knowledge of

all statements made in the declaration about Plaintiff's business due to his involvement in these three

separate lawsuits.  Plaintiff is asking the Court not to consider relevant information.

## Conclusion

Plaintiff is asking this Court to countenance completely novel, unsupported theories of tort

liability against managerial employees.  With respect to its insider trading claims, a company cannot

step into the shoes of all public shareholders and claim damages without pleading a class action

lawsuit and being subject to the requirements of the PSLRA.  For the foregoing reasons, Defendants

request that the Complaint be dismissed with prejudice.

Dated: June 27, 2008                         /sd/ Matthew Rafat
                                             MATTHEW RAFAT, Esq.

10

Defendants' Reply Brief 12(b)(6) Motion                        TVIA, Inc. v. Silva., et al.

I declare that:

I am and was at the time of service of the papers herein a resident of the State of California and over the age of eighteen years and am not a party to this action; my business address is PO Box 111351, Campbell, California 95011.  On **June 27, 2008**, I caused to be served the following document(s):

   1.   DEFENDANTS' SILVA, MCKEE, AND WANG's REPLY BRIEF TO PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION

   [X] **BY EMAIL**

   Stephanie O. Sparks
   60 South Market Street, Suite 1400
   San Jose, CA  95113-2396
   SOS@hogefenton.com

   Brad Jones, Esq.
   Needham, Davis, Kepner & Young, LLP
   1960 THE ALAMEDA STE 210
   SAN JOSE CA  95126-1451
   bjones@ndkylaw.com

   [X]   **BY E-FILING** (to all other parties)

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.   Executed on **June 27, 2008** at San Jose, California.

/sd/ Matthew Rafat
Matthew Rafat

Defendants' Reply Brief 12(b)(6) Motion       TVIA, Inc. v. Silva., et al.