United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TVIA, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>BENJAMIN SILVA, an individual; TSU HSIEN, a/k/a STEVE WANG, an individual; MATTHEW MCKEE, an individual; DIANE BJORKSTROM, an individual; MICHAEL BUTTRICK, an individual; YK SYNNET, a Japanese Corporation; AND DOES 1-50, inclusive,<br><br>    Defendants. | No. 08-1908 SC<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND GRANTING PLAINTIFF'S MOTION <u>FOR SANCTIONS</u> |

## I. **INTRODUCTION**

Defendants Benjamin Silva, Steve Wang, and Matthew McKee (collectively "Defendants"), removed this matter from the Santa Clara County Superior Court. <u>See</u> Notice of Removal, Docket No. 1. The remaining defendants Diane Bjorkstrom, Michael Buttrick, and YK Synnet, a Japanese corporation (collectively "Absent Defendants"), have not made appearances in this matter and have not participated in the briefing on any of the pending motions. Numerous motions are now pending before the Court. Defendants move the Court to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>See</u> Docket No. 6 ("MTD"). Plaintiff Tvia,

1  Inc. ("Tvia" or "Plaintiff") moves the Court to remand the matter
2  to the Superior Court. <u>See</u> Docket No. 20 ("MTR").  Tvia also
3  moves the Court for sanctions against Defendants and their
4  counsel.  <u>See</u> Docket No. 25 ("MFS").  Each of these motions has
5  been fully briefed.  <u>See</u> Docket Nos. 32 ("MTD Opp'n"), 40 ("MTD
6  Reply"), 30 ("MTR Opp'n"), 39 ("MTR Reply"), 36 ("MFS Opp'n"), 41
7  ("MFS Reply").  In addition to these motions, Tvia has filed two
8  motions to strike various portions of Defendants' briefs and
9  supporting declarations.  <u>See</u> Docket Nos. 34, 43.  Defendants did
10 not respond to either motion.  For the reasons set forth herein,
11 the Court GRANTS Tvia's Motion to Remand and GRANTS Tvia's Motion
12 for Sanctions.  The Court therefore does not reach the merits of
13 Defendants' Motion to Dismiss.

**II.  BACKGROUND**

    **A.  Facts Underlying Superior Court Complaint**

17     Tvia designs and sells processors for use in high-definition
18 LCD televisions.  <u>See</u> Request for Judicial Notice in Support of
19 Motion to Remand ("RJN 1"), Docket No. 22, Ex. 1 ("Compl."), ¶ 1.
20 At the times relevant to this action, Tvia's shares were publicly
21 traded on the NASDAQ stock exchange.  <u>Id.</u>

22     Defendants were employed by Tvia as part of Tvia's sales
23 team.  <u>Id.</u> ¶ 2.  Tvia alleges that Defendants regularly engaged in
24 side deals with their distributors, allowing the distributors to
25 avoid complying with certain provisions of their written
26 contracts.  <u>Id.</u> ¶¶ 3-5.  The side deals allowed Defendants to
27 close more sales contracts, giving the appearance that they were

2

1  meeting their quarterly revenue goals, even when the distributors
2  were not actually purchasing anything.  Id. ¶¶ 4-5.  Based on
3  these inflated sales numbers, Defendants received commission
4  bonuses and stock options.  Id. ¶ 4.  To cover the unpaid purchase
5  orders, Defendants would redirect payments from new customers into
6  the delinquent distributors' accounts, telling the new customers
7  that they were making a refundable deposit or were securing
8  manufacturing and distribution rights to new Tvia products.  Id. ¶
9  5.

10  Defendants allegedly profited from this scheme in two ways.
11  First, they received significant bonuses and commissions, in
12  excess of $1,000,000, based on fraudulent purchase orders.  Id. ¶
13  9.  Second, when Tvia's stock price was artificially inflated,
14  they sold their stock, relying on their inside knowledge of Tvia's
15  true financial situation.  Id. ¶ 11.  From these transactions,
16  Defendants allegedly made approximately $437,000 in gains.  Id.

17  Tvia relied on its purchase orders to determine its revenue
18  figures for publicly-filed quarterly financial statements.  Id. ¶
19  3.  Because Defendants allegedly concealed the side deals, Tvia's
20  revenue statements for the first quarter of fiscal year 2006 and
21  the second quarter of fiscal year 2007 were incorrect.  Id. ¶ 8.
22  When the fraudulent transactions were discovered, Tvia incurred
23  legal and accounting fees of approximately $1,500,000 to complete
24  its investigation and restatement of earnings.  Id. ¶ 12.

25  Tvia filed this action in the Santa Clara County Superior
26  Court alleging causes of action for insider trading in violation
27  of California Corporations Code section 25402, breach of fiduciary

3

duty of loyalty, breach of fiduciary duty of care, fraud, and unjust enrichment. See id. ¶¶ 87-120.

Tvia is a Delaware corporation with its principal place of business in Santa Clara, California. Id. ¶ 15. Defendants Silva, Wang, and McKee reside in Alameda County, Santa Clara County, and Placer County, California, respectively. Id. ¶¶ 16-18. Absent Defendant Bjorkstrom resides in Santa Clara County. Id. ¶ 19. Absent Defendant Buttrick resides in Japan, where he operates Y.K. Synnet, a Japanese corporation with its principal place of business in Tokyo, Japan. Id. ¶¶ 20, 21.

### B. Procedural Background In This Court

After Defendants removed the action to this Court, they immediately filed the Motion to Dismiss. Plaintiff asked the Court to defer hearing the Motion to Dismiss until it had time to file the Motion to Remand. Defendants said they would voluntarily remand the action to the Superior Court, conditioned on an agreement that Defendants be allowed to file a demurrer in the Superior Court and that the parties would pay their own fees and costs associated with the removal and remand. See Docket No. 9-1, 9-2. Defendants' counsel claims he and his clients were amenable to remand at all times prior to Tvia actually filing its motion, and that Tvia's counsel only engaged in the motion practice to generate fees. See Defs.' Limited Opp'n to Remand, Docket No. 17. Tvia did not agree to the conditions Defendants placed on remand. Instead, Tvia filed the instant motion and Defendants chose to oppose remand.

///

4

### III. **LEGAL STANDARD**

Tvia argues that removal of this action was improper. Removal is governed by 28 U.S.C. § 1441. Under that statute, a Defendant may remove any civil action over which the district court has original jurisdiction to the district court embracing the area where the state court action was pending. See 28 U.S.C. § 1441(a).

"The burden of establishing federal jurisdiction is upon the party seeking removal . . . and the removal statute is strictly construed against removal jurisdiction." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (internal citations omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Ordinarily, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Thus, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

One exception to this, however, is the doctrine of complete preemption. Id. at 393. According to complete preemption, the force of certain federal statutes is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (internal quotation marks omitted); see also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-67 (1987).

**IV. DISCUSSION**

   **A. Procedural Defects**

Tvia argues that the Notice of Removal was defective from the outset for two reasons: first, Defendants did not include with the Notice of Removal copies of all "process, pleadings, and orders served upon defendant" in the Superior Court action, and second, none of the Absent Defendants agreed to removal. See MTR at 5; MTR Reply at 5. The procedures for removal are governed by 28 U.S.C. § 1446:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). Defendants claim they have complied with all of the statutory requirements. MTR Opp'n at 12.

The Court agrees with Tvia that the Notice of Removal was defective. Defendants assert in their Opposition that they included copies of all process, pleadings, and orders served upon them in the Superior Court action. Id. at 12 (citing Declaration of Matthew Rafat in Support of Opposition, Docket No. 31, Ex. 2). This is patently false. Exhibit A to the Notice of Removal was a single page, which said "Exhibit A (Complaint; already on file with state court)." See Notice of Removal Ex. A. Exhibit B purports to be a declaration signed by Defendant Wang, although it is unclear whether that declaration was filed in the Superior

6

1  Court action in this case or somewhere else, as the document
2  contains neither a cover page nor a caption. <u>See</u> <u>id.</u> Ex. B.  No
3  other pleadings or process from the Superior Court were filed
4  here.  As Defendants must by now be aware, this is not the state
5  court, and it is therefore irrelevant that the Complaint was filed
6  in that court.  Defendants also claim that the Court should
7  disregard this issue because Plaintiff already knew the contents
8  of the Complaint and therefore was not prejudiced.  MTR Opp'n at
9  12.  The purpose of the requirements in section 1446(a) is to
10 allow the court to ascertain the current procedural posture of the
11 removed proceeding.  <u>See</u> <u>California v. Blackwelder</u>, No. CIV
12 S-06-2254 GEB DAD PS, 2007 U.S. Dist. LEXIS 46971, at *10 (E.D.
13 Cal. June 28, 2007).  Without a copy of the Complaint, at the very
14 minimum, the Court would not be able to determine whether it had
15 jurisdiction over the dispute.  As the burden of establishing that
16 the Court has jurisdiction falls on Defendants, the failure to
17 attach the Complaint could be fatal.

18      The second defect Tvia alleges is less clear.  Absent
19 Defendant Bjorkstrom did not join the petition for removal.  <u>See</u>
20 Notice of Removal.  Bjorkstrom has been served in this matter, but
21 it is unclear whether she was served in the Superior Court action
22 prior to removal.  Defendants claim that section 1446(a) allows
23 any individual defendant to remove a case from state court without
24 consent of the other defendants.  <u>See</u> MTR Opp'n at 12.  This is
25 contrary to the law.  <u>See</u> <u>Emrich</u>, 846 F.2d at 1193 n.1
26 ("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state
27 action must join in the petition for removal, except for nominal,

7

unknown or fraudulently joined parties. . . . This general rule applies, however, only to defendants properly joined and served in the action." (internal citations omitted)). Defendants' counsel claims he spoke with Bjorkstrom's counsel and confirmed that Bjorkstrom does not oppose removal. Rafat Decl. ¶ 5. That assertion is inadmissible hearsay. If Bjorkstrom was served in the Superior Court action, the Notice of Removal is defective. The Court need not resolve this issue, however, for the reasons explained below.

### B. Diversity Jurisdiction

In the Notice of Removal, Defendants asserted that removal was proper under the Court's diversity jurisdiction because Defendant Wang resides in China. See Notice of Removal. The Superior Court found that Defendant Wang is a resident of Saratoga and Santa Clara County, California, over Wang's objection. See RJN 1 Ex. 2. Defendants' assertion to the contrary in this case is troubling. Regardless, as at least Defendants Silva and McKee, Absent Defendant Bjorkstrom, and Tvia are all residents of California, removal on diversity grounds is improper. See 28 U.S.C. §§ 1332(a)(1), 1441(b); Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005).

### C. Federal Question Jurisdiction

Defendants' final basis for removal is that Tvia's claims are preempted by federal securities laws. See Notice of Removal; MTR Opp'n. Defendants insist that because Tvia alleges claims relating to insider trading, the Securities Exchange Act of 1934 (the "Exchange Act") preempts Tvia's claims. In support of this

1    position, Defendants rely heavily on section 27 of the Exchange
2    Act, which provides, in part, as follows:

>     The district courts of the United States . . .
>     shall have exclusive jurisdiction of
>     violations of this title or the rules and
>     regulations thereunder, and of all suits in
>     equity and actions at law brought to enforce
>     any liability or duty created by this title or
>     the rules and regulations thereunder.

15 U.S.C. § 78aa.  It is clear that if Tvia brought claims under the Exchange Act, this Court would have exclusive jurisdiction over those claims.  See id.; Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1037 (9th Cir. 2003).  Tvia does not contest this.

Rather, Tvia argues that it did not bring any claims under any provision of the Exchange Act, so it should be allowed to proceed with its state law claims in the Superior Court.  On the face of the Complaint, there is no cause of action arising under federal law.  Defendants argue extensively that the allegations of the Complaint amount to allegations that they violated Section 10(b) of the Exchange Act and the associated regulations.  See MTR Opp'n at 8-10; see also 15 U.S.C. § 77j.  Rule 10b-5 under the Exchange Act provides:

>     It shall be unlawful for any person, directly
>     or indirectly, by the use of any means or
>     instrumentality of interstate commerce, or of
>     the mails or of any facility of any national
>     securities exchange,
>
>     (a) To employ any device, scheme, or artifice
>     to defraud,
>
>     (b) To make any untrue statement of a material
>     fact or to omit to state a material fact
>     necessary in order to make the statements
>     made, in the light of the circumstances under
>     which they were made, not misleading, or

9

>      (c) To engage in any act, practice, or course
>      of business which operates or would operate as
>      a fraud or deceit upon any person,
>
>      in connection with the purchase or sale of any
>      security.

17 C.F.R. §240.10b-5. This has been interpreted to include a prohibition on insider trading. See United States v. O'Hagan, 521 U.S. 642, 651-52 (1997) ("Under the 'traditional' or 'classical' theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information."). The California Corporations Code also contains a prohibition on insider trading:

> It is unlawful for an issuer or any person who
> is an officer, director or controlling person
> of an issuer or any other person whose
> relationship to the issuer gives him access,
> directly or indirectly, to material
> information about the issuer not generally
> available to the public, to purchase or sell
> any security of the issuer in this state at a
> time when he knows material information about
> the issuer gained from such relationship which
> would significantly affect the market price of
> that security and which is not generally
> available to the public, and which he knows is
> not intended to be so available, unless he has
> reason to believe that the person selling to
> or buying from him is also in possession of
> the information.

Cal. Corp. Code § 25402. Section 25502.5(a) of the California Corporate Code provides for the issuer of the stock to recover profits gained from violation of section 25402.

While the district courts have exclusive jurisdiction over violations of the Exchange Act, section 28 makes it clear that the Exchange Act does not completely occupy the field of securities

10

law:

> [T]he rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity. . . . Except as otherwise specifically provided in this title, nothing in this title shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any state over any security or any person insofar as it does not conflict with the provisions of this title or the rules and regulations thereunder.

15 U.S.C. § 78bb(a). Section 28 of the Exchange Act explicitly "preserves both common law and statutory authority over securities matters and thus reflects Congressional recognition of state competence in the securities field." Lippitt, 340 F.3d at 1037.

Defendants simply ignore section 28, repeatedly invoking section 27 and arguing that because Tvia could have asserted claims under section 10(b), it cannot proceed in state court. However, nothing in the Exchange Act requires Tvia to assert a federal claim. "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383 (1996) (discussing legislative history of section 27). Rather, Tvia may assert its claims under the California Corporations Code and California common law, even if the same facts might support a federal claim. See Lippitt, 340 F.3d at 1042.

Where, as here, there is not complete preemption, the "artful pleading doctrine" still allows courts to retain jurisdiction over state law claims that "implicate a substantial federal question."

11

Id. Federal law is not necessary to resolve Tvia's claims. The California Corporations Code encompasses both the alleged misconduct and the remedy sought in the first cause of action for insider trading. See Cal. Corp. Code §§ 25402, 25502.5(a); Compl. ¶¶ 87-99. The fiduciary duties Tvia alleges Defendants breached in the second and third causes of action are codified in California law, and existed in the common law prior to the statute. See Cal. Corp. Code § 309(a); Lehman v. Super. Ct., 145 Cal. App. 4th 109, 119-21 (Ct. App. 2006); Compl. ¶¶ 100-111. California law also provides a cause of action for fraud, as claimed in the fourth cause of action. See Vega v. Jones, Day, Reavis & Pogue, 17 Cal. Rptr. 3d 26, 32 (Ct. App. 2004); Cal. Civ. Code §§ 1572, 1710; Compl. ¶¶ 112-117. Finally, California law provides for a claim for unjust enrichment, as Tvia alleged in the fifth cause of action. See Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., 94 Cal. App. 4th 151, 171 n.23 (Ct. App. 2001); Compl. ¶¶ 118-120. As such, Tvia is not seeking to enforce any provision of the Exchange Act, or the regulations thereunder, and federal law therefore is not necessary to resolve Tvia's claims. Lippitt, 340 F.3d at 1043.

Defendants next argue that the case must involve federal securities law because the Securities & Exchange Commission ("SEC") is investigating Defendants. See MTR Opp'n at 13-14. Defendants assert, based solely on inadmissible hearsay, that Tvia requested the SEC's involvement. Id. at 13 (citing Rafat Decl ¶ 6). The SEC's involvement is immaterial. As described above, it is possible that Defendants' alleged misconduct violated both

12

state and federal law.

The final basis Defendants assert for this Court's jurisdiction is that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") allows removal of certain "covered" class action suits. Defendants appear to claim that Tvia's requested damages must be the damages of all of Tvia's shareholders, and that Tvia is impliedly suing on behalf of those shareholders, so its suit is governed by the provisions of the SLUSA and the Private Securities Litigation Reform Act of 1995 ("PSLRA") governing class actions. See MTR Opp'n at 17-18. This argument has no merit whatsoever, as Tvia's Complaint does not satisfy any definition of "covered class action." Defendants rely on 15 U.S.C. § 78bb(f)(B)(i)(II), which defines a covered class action as:

> (i) any single lawsuit in which --
>
> > (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

See MTR Opp'n at 17. There is nothing in the Complaint to suggest that Tvia seeks to recover "on behalf of other unnamed parties similarly situated." Defendants claim that "Plaintiff's stated source of damages is the difference in price of what all shareholders lost after alleged securities fraud." Id. at 18. This is false. The damages in question are those explicitly

13

1  provided for in California Corporations Code section 25502.5(a),
2  which allows the issuer of a stock -- in this case, Tvia -- to
3  recover for violation of the insider trading prohibition in
4  California Corporations Code section 25402:

> Any person other than the issuer who violates Section 25402 shall be liable to the issuer of the security purchased or sold in violation of Section 25402 for damages in an amount up to three times the difference between the price at which the security was purchased or sold and the market value which the security would have had at the time of the purchase or sale if the information known to the defendant had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information and shall be liable to the issuer of the security or to a person who institutes an action under this section in the right of the issuer of the security for reasonable costs and attorney's fees.

Cal. Corp. Code § 25502.5(a).  In the Complaint, Tvia sets forth for each Defendant the number of shares sold, the sales price, and the difference between the sales price and the market value after disclosure of the alleged wrongdoing.  See Compl. ¶¶ 94-96.  For each Defendant, Tvia then multiplied that difference by three, as permitted in the statute, to reach the amount of damages it may recover.  See id.  Contrary to Defendants' assertions, these calculations represent only the damages Tvia may recover if it prevails in the Superior Court on its section 25402 claim, not damages to other shareholders.  Tvia did not file a covered class action suit, so the provisions of the SLUSA and PSLRA allowing for removal of such suits are inapplicable.

For all of the foregoing reasons, Defendants have failed to carry their burden of showing that this suit falls within the

14

Court's original jurisdiction.  The Court therefore GRANTS Tvia's motion to remand this case to the Superior Court.  See 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

## V. SANCTIONS

Tvia seeks sanctions against Defendants and their counsel, Mr. Rafat, in the total amount of $11,742.50, the amount of attorney's fees and costs Tvia incurred in litigating the Motion to Remand, Motion to Dismiss, and Motion for Sanctions.  See MFS Reply at 8-9.  Defendants maintain that they offered to remand voluntarily, subject to certain conditions, and that Tvia itself caused all of the subsequent litigation in this matter.  See MFS Opp'n.

Where a district court remands a matter after removal for lack of subject matter jurisdiction, the court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c). The question of whether or not to award fees "should turn on the reasonableness of the removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."  Id.

The Court finds that Defendants had no objectively reasonable

15

basis for seeking removal. Defendants initially premised removal on both diversity and federal question jurisdiction. The assertion of diversity jurisdiction was premised on a misrepresentation of Defendant Wang's residence. Even if Wang did reside in China, however, the claim of diversity was absurd on its face, as Defendants Silva and McKee, Absent Defendant Bjorkstrom, and Tvia all reside in California, destroying any notion of complete diversity. Defendants' alternate basis for removal, that the Exchange Act preempts Tvia's claim, was equally meritless. Defendants willfully ignored and misinterpreted the governing statutes and case law.

Defendants' suggestion that Tvia is responsible for all of the post-removal litigation is unwarranted. Defendants offered to remand voluntarily only if Plaintiff would forego its statutory right to recover attorney's fees and costs, and only if this Court inserted itself into the Superior Court proceedings to set a schedule for Defendants to file a demurrer. With regard to the first condition, given the obvious procedural and substantive flaws in the Notice of Removal, Tvia had no reason to give up the opportunity to recover its costs. This is particularly true given that Tvia informed Mr. Rafat of its jurisdictional arguments prior to filing the Motion to Remand, and Defendants still refused to remand without strings attached. With regard to the second condition, the filing deadlines in the Superior Court are governed by California Code of Civil Procedure section 430.90(a). This Court simply has no authority to set any such deadline, regardless of whether Defendants' proposed filing date complied with the

16

statute or not. That issue, and any subsequent case management issues, would fall solely within the power of the Superior Court.

Defendants made an objectively unreasonable attempt to remove this action from the Superior Court. They subsequently offered to remand the matter, but attached two unreasonable conditions to that offer. As a result, the parties litigated three motions in this Court only to reach an outcome that both sides likely recognized as inevitable from the outset. Under such circumstances, the Court finds that Tvia should be entitled to recover its just costs and fees. The Court therefore GRANTS Tvia's motion.

Tvia requests a total award of $11,742.50. The Court has reviewed all of the documentation supporting this figure, including the declarations of Tvia's counsel, Gregory Charles. See Docket Nos. 26, 42. The Court finds that, in light of Mr. Charles's experience and qualifications, and in light of the quantity and nature of the work performed, the requested award is appropriate.

## VI. CONCLUSION

For the reasons set forth above, the Court GRANTS Tvia's Motion to Remand and GRANTS Tvia's Motion for Sanctions. The Court finds it unnecessary to rule on the Defendants' Motion to Dismiss, or on Tvia's two Motions to Strike. The Court ORDERS as follows:

   1. This matter is remanded to the Santa Clara County Superior Court.

17

2.  Defendants and their counsel, Mr. Rafat, shall pay Tvia $11,742.50.

IT IS SO ORDERED.

August 15, 2008



UNITED STATES DISTRICT JUDGE